**People of the State of Illinois, Plaintiff-Appellee,
v. John S. Tadla, Defendant-Appellant.**

**Gen. No. 53,250.**

First District, Second Division.

May 6, 1969.

Maurice A. Winkler, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and L. Michael Getty, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Defendant was found guilty after a bench trial of the crimes of public indecency and battery. Defendant was placed on probation for a period of one year on each finding and sentenced to serve the first four months of each term at the Illinois State Farm at Vandalia, the terms to run concurrently.

Complaining witness, Marcie Bukala, testified that at approximately 8:30 a. m. on January 16, 1968 she was walking in the vicinity of 62nd Place and Central Park Avenue in Chicago on her way to a beauty school. Under her arm she carried a bag containing nurse's shoes and a wig. The witness stated that defendant approached in a blue automobile to within five feet of her and asked if she wanted a ride. Miss Bukala testified she kept walking without speaking a word and crossed the street. Defendant thereupon drove his automobile onto the sidewalk approximately four feet in front of her, opened the door and exposed his penis to her.

Miss Bukala testified that she began to run back across the street and that defendant turned the automobile around and again drove it onto the sidewalk near her. He alighted from the vehicle and chased Miss Bukala, who dropped the bag which she was carrying under her arm. Defendant picked up the bag and, from five feet away, threw it at Miss Bukala and struck her in the face with it. He cursed her and stated, "Next time I get you, I'll kill

you." Defendant then got back into his automobile and drove away.

Miss Bukala testified that she thought the vehicle driven by defendant was a Tempest automobile, but was not certain; that she thought the first three characters of the vehicle's license number were "PL 5," but was not certain; and that defendant was wearing a black leather jacket and black gloves at the time of the assault. The police were notified of the incident later that day.

On January 20th, four days after the incident, Miss Bukala was seated in her brother's automobile parked near 62nd Street and Homan Avenue waiting for her brother to return from a nearby store, when she observed defendant drive by in a blue automobile. After her brother returned to his automobile, defendant's automobile passed a second time and Miss Bukala's brother followed in pursuit in his automobile. Defendant stopped his automobile a short distance away to pick up two passengers and Miss Bukala's brother stopped his vehicle nearby, got out, and went to the driver's window of defendant's automobile. Miss Bukala testified that she then alighted from her brother's automobile, went to defendant's automobile "to make sure it was him," and stated to her brother, "Al, that's him." When defendant saw Miss Bukala, he sped away in his vehicle. The police were again notified.

Several days later, Police Officer Frank Lynch, who had previously received a description of Miss Bukala's assailant, was detailed to patrol an area of the city where a person fitting the assailant's description "was operating . . . from 9:00 to 9:30 in the morning." The officer observed an automobile driven by defendant traveling aimlessly in the area, and after following the automobile for five blocks, the officer ordered it stopped. Defendant matched the description which the officer had of Miss Bukala's assailant and defendant was placed under arrest.

The testimony of Miss Bukala's brother substantially corroborated the testimony of Miss Bukala concerning the events which took place on January 20th. Defendant's objection to Miss Bukala's brother's testimony was overruled.

John Tadla testified that he lived with his parents in the 6300 block of South Latrobe Avenue in Chicago and that he was employed in Lincolnwood, Illinois. He testified that he worked until 7:00 a. m. on the morning of January 16, 1968 and that he left work approximately 7:30 a. m. and went to a nearby bowling alley where he usually had breakfast with several of his fellow employees. He testified that he remained at the bowling alley until 8:30 a. m. and then proceeded home, a trip which takes from 45 minutes to an hour to drive. Defendant stated he arrived home approximately 9:00 a. m., told his mother he was home, and went to bed.

Defendant further testified that on the morning in question he was operating a 1966 Ford Galaxie automobile and also testified that neither he nor his mother owned or operated a Tempest automobile. Defendant denied owning a black leather jacket or black gloves, and further denied assaulting Miss Bukala, exposing himself to her, or speaking to her on the morning in question.

Defendant's mother testified that defendant returned home from work at approximately 9:00 a. m. on the morning in question and that on that date he was driving a 1966 Ford Galaxie automobile. She further testified that defendant did not own a black leather jacket or black gloves. Defendant's supervisor at work testified as to defendant's good moral character and reputation in the community.

Defendant first maintains that the trial court was without power to admit him to probation for a period in excess of the maximum term for which he could have been imprisoned under the statute defining the crime with which

123

he was charged. He argues that the trial court was in error in placing him on probation for a period of one year on each finding of guilty because the statutes under which he was found guilty set the maximum term of incarceration at six months. (Defendant's argument in this regard must be limited to the period of probation set with respect to the battery finding, since the maximum term of imprisonment which could have been imposed on a finding of guilty of public indecency was changed from six months to one year prior to January 16, 1968, the date of the incident in question.) See Ill Rev Stats 1967, c 38, pars 11–9, 12–3.

No case from Illinois has been cited, nor have we found any, dealing with the question of whether a defendant, after a plea, a finding or a verdict of guilty, may be placed on probation for a period which exceeds the maximum term of imprisonment to which he may have been sentenced under the statute defining the crime of which he was convicted.

In those jurisdictions where the length of the period of probation may not exceed the maximum period for which a defendant could have been imprisoned, the question is specifically governed by statute; but in those jurisdictions where the probation statute does not specifically cover the question, it has been generally held that the length of the period of probation may exceed the maximum term for which a defendant may be imprisoned. See 24 CJS, Criminal Law, §§ 1571(4), 1618(9), and the cases cited therein. (See also Driver v. United States, 232 F2d 418; Hollandsworth v. United States, 34 F2d 423; United States v. Sumpter, 287 F Supp 608; 18 USCA, par 3651.) We are of the opinion that a defendant convicted of a crime may be admitted to probation for a term longer than the period of imprisonment to which he might otherwise have been sentenced under the statute defining the crime.

■ The statute governing probation in Illinois is found in Article 117 of the Criminal Code. Paragraph 117–1 specifically recites that the term of probation may be for a period of not less than six months and that it shall not exceed five years. Ill Rev Stats 1967, c 38, par 117–1(b). Nothing in the probation statute relates to the question of whether the period of probation may be fixed for a length of time in excess of the period for which the defendant might otherwise be incarcerated under the terms of the particular statute defining the crime. Nevertheless, it has consistently been held that the question of whether a defendant shall be admitted to probation as well as the question of the length of the period of probation, within the limits set out in the probation statute, are for the sound discretion of the trial court after an analysis of the defendant's history, record, family life, and the like. People v. Husser, 94 Ill App2d 33, 236 NE2d 735.

■ As stated in the Committee Comments to Article 117 of the Criminal Code, the purpose of probation is to afford an unhardened person convicted of a crime the opportunity to rehabilitate himself under the supervision of a probation officer without institutional confinement. We do not have the suspended sentence aspect of probation employed in other jurisdictions. (See SHA, c 38, Art 117, p 3.) A person admitted to probation is subject to specified mandatory conditions set out in Article 117, as well as other conditions specified therein as the trial court, in its discretion, may order. Ill Rev Stats 1967, c 38, par 117–2; People v. McAndrew, 96 Ill App2d 441, 239 NE2d 314. In the event the probationer violates a condition of his probation, and the trial court so determines, the probationer is protected to the extent that the court may either alter the conditions of probation or "imprison the probationer for a term not to exceed the maximum penalty for the offense of which the probation-

er was convicted." Ill Rev Stats 1967, c 38, par 117–3 (d) ; People v. White, 93 Ill App2d 283, 235 NE2d 393.

Defendant next contends that the trial court was influenced by improper evidence, erroneously admitted over objections by the defendant. He first states that the court improperly allowed a statement made by Miss Bukala to her brother, allegedly out of the presence of the defendant, that the defendant was her assailant. However, it appears that Miss Bukala made the statement to her brother on two separate occasions on January 20th, the first time while she and her brother were seated in his automobile, admittedly outside the presence of the defendant, to which an objection by defendant was sustained. The second time the statement was made was after Miss Bukala's brother had alighted from his automobile and approached the vehicle in which defendant was seated, and after Miss Bukala had gotten out of the automobile in order to "be sure it was him." The trial court overruled an objection to this second statement because, as the court stated, Miss Bukala testified "that her brother is [sic] by the window of the automobile of John [Tadla] when she said that."

The other allegedly improper evidence heard by the trial court over objection of the defendant is the testimony of Miss Bukala's brother concerning the events which took place on January 20th. This evidence corroborates the testimony of Miss Bukala as to the person identified by her as her assailant and was properly admitted.

Defendant's third point is that Miss Bukala was not a credible witness. He states that she was uncertain at trial as to the make of the automobile driven by her assailant, whereas she told the police she was certain of it; that she was uncertain as to the license number of that vehicle, whereas she also told the police she was certain of it; and that she testified that defendant wore a black leather jacket and gloves on the day

126

of the assault, whereas both defendant and his mother denied defendant's ownership of such articles of clothing. These matters went to the credibility of the witness, to be resolved by the trier of fact. People v. Boney, 28 Ill2d 505, 192 NE2d 920. In light of the accurate description and unimpeached identification of defendant given by Miss Bukala, her clear account of the incident, unaffected on cross-examination, and the ample time and opportunity she had to observe her assailant at the time of the incident, we are unable to say that the trial court was in error in finding her testimony credible.

■ Defendant raises the argument that the two crimes of which he was found guilty were in reality a single transaction and that he therefore should have been found guilty on one or the other count, not both. Apart from the fact that this matter was raised for the first time on this appeal in defendant's reply brief, a consideration of the facts of the case clearly reveals that defendant's acts of public exposure and of battery were separate and distinct acts.

■ The final point raised by defendant, that the penalties imposed by the trial court were excessive, is unavailing. The penalties were well within the limits set by the respective pertinent statutes.

For these reasons the judgments are affirmed.

Judgments affirmed.

LYONS, P. J. and McCORMICK, J., concur.