THE STATE OF OHIO, APPELLEE, *v.* BORCHARD, APPELLANT.

[Cite as State v. Borchard (1970), 24 Ohio App. 2d 95.]

(No. 671—Decided August 17, 1970.)

*Mr. Paul J. Gerig,* for appellee.
*Messrs. Lavelle & Yanity,* for appellant.

GRAY, P. J. This cause is in this court on appeal from a judgment of the Athens County Municipal Court upon a verdict of a jury finding defendant guilty of the offense charged in the complaint, to wit, indecent exposure.

Defendant, feeling aggrieved at the result of his trial, filed notice of appeal and assigned the following errors:

"I—The trial court, in allowing plaintiff-appellee to retain the fruits of its unlawful search with the denial of defendant-appellant's motion to suppress or exclude evidence, violated the 'exclusionary rule' as promulgated by the Supreme Court of the United States in many recent decisions, and thus committed reversible error.

"II—Section 2905.30 of the Ohio Revised Code, which

prohibits 'willfully' making an indecent exposure of one's person is unconstitutional on its face in that it fails to provide ascertainable standards as required by the due process clauses of the Fifth and Fourteenth Amendments, and said statute fails to specifically define the prescribed conduct as a criminal statute must to satisfy the dictates of the Sixth Amendment.

"III—There being no evidence whatsoever of an exposure of defendant-appellant's person or his private parts and, furthermore there being no evidence of any lewd, attention-seeking, or exhibitory gestures by defendant-appellant, it therefore became incumbent upon the trial court to dismiss the case upon the motion of defendant-appellant at the close of plaintiff-appellee's case for the reason that the elements of the charged offense were not made out, and said erroneous refusal to dismiss was compounded with the court's subsequent failure to overturn the verdict as not sustained by the evidence."

A motion to suppress evidence was made before the trial court on the ground that the deputy sheriffs who made the arrest of defendant had no search warrant, were trespassers and that, therefore, any evidence they secured was the fruit of an unlawful search; that such action of the trial court violated the "exclusionary rule" as promulgated by the United States Supreme Court.

The record shows that defendant in the presence of 20 to 70 persons, including those of the female gender and children, went swimming in the nude in the afternoon of May 30, 1969, in a pond known as the "209 Reservoir" in Athens County by invitation of one of the owners thereof. Deputy sheriffs, in response to an anonymous telephone call, came to the reservoir over private property without a search warrant and without permission, observed defendant swimming in the nude before other persons and arrested defendant without a warrant.

We think that such assignment of error is without merit. The claimed error has been passed upon by the United States Supreme Court in *Hester* v. *United States* (1924), 265 U. S. 57, 44 S. Ct. 445, 68 L. Ed. 898. The evidence in that case showed that revenue officers approached

the house of Hester's father where defendant lived. They concealed themselves 50 to 100 yards away from defendant's house and saw Hester come out of the house and hand another man a quart bottle. An alarm was given. Hester went to a car standing near, took a gallon jug from it, and he and the other man ran.

Mr. Justice Holmes, speaking for the court said:

"The officers had no warrant for search or arrest and it is contended that this made their evidence inadmissible, it being assumed, on the strength of the pursuing officer's saying that he supposed they were on Hester's land that such was the fact. It is obvious that even if there had been a trespass the above testimony was not obtained by an illegal search or seizure. The defendant's own acts and those of his associates disclosed the jug, the jar and the bottle—and there was no seizure in the sense of the law when the officers examined the contents of each after it had been abandoned. This evidence was not obtained by the entry into the house and it is immaterial to discuss that. The suggestion that the defendent was compelled to give evidence against himself does not require an answer. The only shadow of a ground for bringing up the case is drawn from the hypothesis that the examination of the vessels took place upon Hester's father's land. *As to that it is enough to say that apart from the justification the special protection accorded by the Fourth Amendment to the people, in their persons, houses, papers and effects is not extended to the open fields.* The distinction between the latter and the house is as old as the common law. 4 Blackstone's Commentaries 223, 225, 226." (Emphasis added.)

That case was cited with approval in *Katz v. United States* (1967), 389 U. S. 347, 88 S. Ct. 507. Mr. Justice Stewart, speaking for the court, at pages 351 and 352 in the opinion, said:

"Because of the misleading way the issues have been formulated the parties have attached great significance to the characterization of the telephone booth from which the petitioner placed his calls. The petitioner has strenuously argued that the booth was a 'constitutionally protected area.' The Government has maintained with equal vigor

that it was not. *But this effort to decide whether or not a given 'area,' viewed in the abstract, is 'constitutionally protected' deflects attention from the problem presented by this case. For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.* See *Lewis* v. *United States,* 385 U. S. 206, 210, 87 S. Ct. 424, 427, 17 L. Ed. 2d 312; *United States* v. *Lee,* 274 U. S. 559, 563, 47 S. Ct. 746, 748, 71 L. Ed. 1202. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. See *Rios* v. *United States,* 364 U. S. 253, 80 S. Ct. 1431, 4 L. Ed. 2d 1688; *Ex parte Jackson,* 96 U. S. 727, 733, 24 L. Ed. 877." (Emphasis supplied.)

In the final analysis, let it be said that the relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. The criterion in turn depends upon the facts and circumstances—the total atmosphere of the case. See *United States* v. *Rabinowitz* (1950), 339 U. S. 56, 66; 94 L. Ed. 653; 70 S. Ct. 430, 435. No search was made. Defendant by his own volition exposed his nude person before 20 to 70 persons, male, female and children, on premises not owned in whole or part by him, nor by any member of his family. The record does not disclose the presence of a house and, therefore, "209 Reservoir" was not adjacent to a house or residence or part of a curtilege. Under these circumstances, he had no cause to complain concerning the absence of a search warrant.

The evidence shows that from 20 to 70 persons were present when defendant exhibited the private parts of his body to them. The record does not show whether any or all of those people were trespassers or invitees. The record does not show that defendant inquired of all those present to determine whether they were invitees or trespassers. No layman had the authority to make an arrest as defendant was committing only a misdeameanor. Defendant was not making any objection to these men, women and children seeing his body in the nude. The objection made was that the officers saw him in the nude, but had no authority

under the law to arrest him for a misdemeanor committed in their presence. As is often the case, defendant is not contrite concerning his act, but merely vexed that he was arrested for committing it.

"* * * the office of all the judges is always to make such (d) construction as shall suppress the mischief, and advance the remedy and to suppress subtle inventions and evasions for continuance of the mischief and *pro privato commodo,* and to add force and life to the cure and remedy, according to the true intent of the makers of the act, *pro bono publico." Heydon's case* (1584), 3 Co. Rep. 7a, 76 Eng. Rep. 637, 638.

The court now will consider the second assignment of error.

The affidavit charged the offense in the words of the statute. R. C. 2941.05 authorizes such procedure.

Matthias, J., speaking for the court in *State* v. *Yudick,* 155 Ohio St. 269, at pages 276, 277, said:

"The record discloses that the accused did not request a bill of particulars. It is contended by his counsel that because of details set forth in the indictment an application for a bill of particulars would have been futile. A plea of not guilty by the accused having been entered, the case is governed by the decision of this court in *State* v. *Hutton,* 132 Ohio St. 461, 9 N. E. 2d 295. The following language in the opinion thereof is pertinent:

" 'Therefore, if the defendant felt that the affidavit was not sufficiently definite to inform him as to the charge preferred against him, it was his privilege and duty to seasonably request of the prosecutor or the court a bill of particulars setting up more specifically the nature of the offense charged. This he failed to do. Hence the lower courts were correct in holding that the matter was waived when the defendant proceeded to trial.' "

Since the offense was laid in the affidavit in the terms of the statute, it stated an offense denounced by the laws of Ohio and if, for any reason, defendant thought that the charge against him was indefinite, he should have asked for a bill of particulars. This matter was waived by defendant by going to trial on the affidavit as worded.

"Indecent exposure" has been defined as an indecent and obscene exposure of the person by exhibition of those private parts which instinctive modesty, human decency or self-respect require shall be kept covered in the presence of others. An exposure of the person becomes indecent when it occurs at such a time and place where a reasonable man knows or should know his act will be open to the observation of others.

The words "indecent exposure" found in the statute are not vague and indefinite. On the contrary, they have a well defined, well understood, and generally accepted meaning, and by their use an accused is informed of the nature of the act he is alleged to have committed.

For the reasons above stated, we hold the statute to be constitutional and that this assignment of error is without merit.

For his third assignment of error defendant claims that there is no evidence of attention seeking or exhibitory gestures by defendant. Defendant loses sight of the fact that when R. C. 2905.30 was passed none of the above elements were contained in the section.

We have read the record and are of the opinion that defendant was in the nude before people variously estimated at 20 to 70 in number. Defendant put in evidence testimony of several women who saw defendant in his nude condition, but who said that they were not annoyed by such conduct. The court wishes to point out that the gist of the offense is that the indecent exposure was made in a place where there were other persons to be offended or annoyed thereby, not whether or not they were actually offended or annoyed.

We find that defendant wilfully made indecent exposure of his person in a place where there were other persons to be offended and annoyed thereby.

We find that none of the claimed errors were prejudicial, therefore, the judgment of the trial court is affirmed.

*Judgment affirmed.*

ABELE & STEPHENSON, J.J., concur.