82 Ill.2d 444 (1980)
412 N.E.2d 483
THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v.
GARY "MIKE" GARRISON, Appellee.
No. 52750.
Supreme Court of Illinois.
Opinion filed September 29, 1980.
Rehearing denied November 26, 1980.
*445 *446 William J. Scott, Attorney General, of Springfield, and Frank B. Schweitzer, Special Prosecutor, of Taylorville (Donald B. Mackay, Melbourne A. Noel, Jr., and David Cassorla, Assistant Attorneys General, of Chicago, of counsel), for the People.
James B. Wham, of Wham & Wham, of Centralia, for appellee.
Reversed and remanded.
MR. JUSTICE UNDERWOOD delivered the opinion of the court:
The circuit court of Marion County declared unconstitutional sections 11-9(a)(3) and 11-9(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, pars. 11-9(a)(3), 11-9(b)). The State has appealed directly here pursuant to our Rule 302(a)(1) (73 Ill.2d R. 302(a)(1)). We reverse.
The defendant, Gary "Mike" Garrison, was charged by information with "knowingly, at a public place, while standing behind a storm door, expose[ing] his sex organ in a lewd manner" to the prosecutrix "with the intent to arouse his sexual desires" in violation of section 11-9(a)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 11-9(a)(3)). Section 11-9 provides:
"Public Indecency. (a) Any person of the age of 17 years and upwards who performs any of the following acts in a public place commits a public indecency:
(1) An act of sexual intercourse; or
(2) An act of deviate sexual conduct; or

*447 (3) A lewd exposure of the body done with intent to arouse or to satisfy the sexual desire of the person; or
(4) A lewd fondling or caress of the body of another person of either sex.
(b) `Public place' for purposes of this Section means any place where the conduct may reasonably be excepted to be viewed by others.
(c) Sentence.
Public indecency is a Class A misdemeanor."
Defendant moved to dismiss the information on the ground that sections 11-9(a)(3) and 11-9(b) violated the first, third, fourth, fifth, sixth, ninth and fourteenth amendments to the United States Constitution, and he reiterates those arguments here. The remarks of the trial judge at the hearing suggest that he relied on only one of the arguments, but he signed an order drafted by the defendant which incorporated by reference all the contentions raised in the motion to dismiss.
For purposes of analysis, the defendant's contentions fall into four main categories. He argues: (1) that the statute applied in this case violates his privacy rights; (2) that the statute is overbroad and therefore unconstitutional on its face; (3) that it is so vague that it violates constitutional guarantees of due process; and (4) that a comparison of sections 11-9 and 11-20 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, pars. 11-9, 11-20) reveals a legislative classification not reasonably related to a legitimate governmental purpose, thus denying him equal protection of the laws.
Defendant's argument that this prosecution violates his privacy rights rests upon the decision of the United States Supreme Court in Stanley v. Georgia (1969), 394 U.S. 557, 22 L.Ed.2d 542, 89 S.Ct. 1243. In Stanley, the defendant had been convicted of possessing obscene material in violation of Georgia law. The material was discovered when State agents searched Stanley's home pursuant *448 to a search warrant authorizing them to search for equipment, records, and other material used in or derived from an illegal wagering business. The Supreme Court reversed the conviction, holding that "the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime." (Stanley v. Georgia (1969), 394 U.S. 557, 568, 22 L.Ed.2d 542, 551, 89 S.Ct. 1243, 1249.) The opinion of the court emphasized the right of the individual to read or view whatever books or films he pleases in the privacy of his own home. In a subsequent case, United States v. Reidel (1971), 402 U.S. 351, 28 L.Ed.2d 813, 91 S.Ct. 1410, however, the Supreme Court limited Stanley to factual situations which do not involve actions outside the home. The decision in Reidel upheld the validity of a Federal statute which made criminal the mailing of obscene material even though the recipients were adults who had requested the mailing and who, under Stanley, were entitled to view the materials privately in their own homes.
Applying the principles of Stanley and Reidel to the facts of this case, we conclude that this prosecution does not unconstitutionally invade the defendant's right to privacy. The information charged the defendant with exposing himself by standing at a storm door at 404 Melrose in Centralia. The oral argument in the trial court and the briefs in this court indicate that the Melrose address is the defendant's residence. Although the action with which defendant is charged thus took place within the confines of his home, its essential characteristic for the purpose of our consideration is that the defendant "knowingly" made it visible to the prosecutrix outside his house. Under the circumstances alleged in the information, Stanley does not preclude the prosecution of the defendant.
The argument that the statute is overbroad rests on the premise that the statute may allow criminal prosecution in some situations in which the activities of a hypothetical *449 defendant fall within areas protected by the right of privacy and the first amendment right of expression. In regard to the privacy argument, we need not decide whether that premise is accurate; the overbreadth doctrine does not apply to privacy rights. Lovisi v. Slayton (E.D. Va. 1973), 363 F. Supp. 620, 627-29, aff'd (4th Cir.1976) (en banc), 539 F.2d 349, cert. denied (1976), 429 U.S. 977, 50 L.Ed.2d 585, 97 S.Ct. 485; Harris v. United States (D.C. App. (1974)) (en banc), 315 A.2d 569, 575; Pedersen v. City of Richmond (1979), 219 Va. 1061, 1066, 254 S.E.2d 95, 99.
As a general rule a defendant may not avoid his prosecution because a similar prosecution of other individuals under the same statute might violate their constitutional rights. (Burch v. Louisiana (1979), 441 U.S. 130, 60 L.Ed.2d 96, 99 S.Ct. 1623; Bates v. State Bar (1977), 433 U.S. 350, 53 L.Ed.2d 810, 97 S.Ct. 2691; Broadrick v. Oklahoma (1973), 413 U.S. 601, 37 L.Ed.2d 830, 93 S.Ct. 2908; McGowan v. Maryland (1961), 366 U.S. 420, 6 L.Ed.2d 393, 81 S.Ct. 1101; People v. Bombacino (1972), 51 Ill.2d 17; City of Chicago v. Lawrence (1969), 42 Ill.2d 461, cert. denied (1969), 396 U.S. 39, 24 L.Ed.2d 208, 90 S.Ct. 263; People v. Reiner (1955), 6 Ill.2d 337.) The overbreadth doctrine is an exception to this rule. It allows a defendant to challenge the validity of a statute on its face when the mere existence of the statute may inhibit the exercise of expressive or associational rights protected by the first amendment, even though those rights do not protect the activities of the defendant. (Bates v. State Bar (1977), 433 U.S. 350, 380, 53 L.Ed.2d 810, 833, 97 S.Ct. 2691, 2707; Broadrick v. Oklahoma (1973), 413 U.S. 601, 611-17, 37 L.Ed.2d 830, 839-43, 93 S.Ct. 2908, 2915-18.) The issue now before us, however, is whether the defendant may avoid this prosecution if the statute may be applied to violate the privacy rights of others. Apart from a reference of questionable validity *450 in Attwood v. Purcell (D. Ariz. 1975), 402 F. Supp. 231, 236, the defendant has not cited any case extending the overbreadth doctrine to privacy rights; nor have we found any. The overbreadth doctrine may be necessary to protect certain easily inhibited first amendment expressive and associational rights, but it should be applied very sparingly, even when dealing with those rights. (Broadrick v. Oklahoma (1973), 413 U.S. 601, 613, 37 L.Ed.2d 830, 840-41, 93 S.Ct. 2908, 2916; cf. Bates v. State Bar (1977), 433 U.S. 350, 380-81, 53 L.Ed.2d 810, 833-34, 97 S.Ct. 2691, 2707-08; Talsky v. Department of Registration & Education (1977), 68 Ill.2d 579, 590.) Unlike the actions with which the defendant is charged here, and unlike expressive and associational activities which generally occur in public, the activities which are protected by the right of privacy are by their nature generally unknown to prosecutors and therefore are not easily inhibited by official action. We do not believe that privacy rights require the protection of an overbreadth doctrine to secure their free exercise, and we consequently decline to allow one whose personal right of privacy has not been violated to assert the hypothetical rights of others. See Lovisi v. Slayton (E.D. Va. 1973), 363 F. Supp. 620, 627-29, aff'd (4th Cir.1976) (en banc), 539 F.2d 349, cert. denied (1976), 429 U.S. 977, 50 L.Ed.2d 585, 97 S.Ct. 485; Harris v. United States (D.C. App. 1974) (en banc), 315 A.2d 569, 575; Pedersen v. City of Richmond (1979), 219 Va. 1061, 1066, 254 S.E.2d 95, 99.
Defendant also alludes to Eisenstadt v. Baird (1972), 405 U.S. 438, 31 L.Ed.2d 349, 92 S.Ct. 1029, as support for his contention that he should be able to assert the privacy rights of others not involved in this litigation. Eisenstadt, however, is not apposite to this case. The gist of Eisenstadt is that a defendant may be heard to assert the rights of nonparties when their rights are affected by the prosecution and the statute is so worded or applied *451 that they will not be prosecuted under it. The defendant does not assert the existence of any such individuals and we do not perceive any. The defendant therefore is limited to asserting violations of his privacy rights and, as indicated above, we do not find any.
Although the overbreadth doctrine does apply when first amendment expressive rights are implicated, we reject the premise of defendant's first amendment overbreadth argument in regard to this statute: that the statute on its face infringes protected expressive rights. The defendant's argument has a certain surface appeal. The statute itself does not disclaim application to operas, ballets, plays or other performances within the protection of the first amendment. Since the statute does not contain obscenity standards acceptable under Miller v. California (1973), 413 U.S. 15, 37 L.Ed.2d 419, 93 S.Ct. 2607, its validity would be highly suspect if it were applied to activities which implicate first amendment rights. (Doran v. Salem Inn, Inc. (1975), 422 U.S. 922, 45 L.Ed.2d 648, 95 S.Ct. 2561; Attwood v. Purcell (D. Ariz. 1975), 402 F. Supp. 231; Salem Inn, Inc. v. Frank (E.D.N.Y. 1974), 381 F. Supp. 859, aff'd (2d Cir.1975), 522 F.2d 1045; City of Revere v. Aucella (1975), 369 Mass. 138, 338 N.E.2d 816; Koppinger v. City of Fairmont (1976), 311 Minn. 186, 248 N.W.2d 708; cf. California v. La Rue (1972), 409 U.S. 109, 34 L.Ed.2d 342, 93 S.Ct. 390; Yauch v. State (1973), 109 Ariz. 576, 514 P.2d 709; Crownover v. Musick (1973), 9 Cal.3d 405, 509 P.2d 497, 107 Cal. Rptr. 681, cert. denied (1974), 415 U.S. 931, 39 L.Ed.2d 489, 94 S.Ct. 1443; Wright v. Town of Huxley (Iowa 1977), 249 N.W.2d 672.) We find, however, that activities which are primarily expressive are not within the scope of the statute.
An examination of the statutory scheme of which section 11-9 is a part and the history of prosecutions under the statute reveals that it does not impinge on first amendment *452 rights. Section 11-9 is part of article 11 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, pars. 11-1 through 11-22), which is titled "Sex Offenses." Also within article 11 is section 11-20, titled "Obscenity," which makes criminal the acts of one who knowingly or recklessly:
(1) Sells, delivers or provides, or offers or agrees to sell, deliver or provide any obscene writing, picture, record or other representation or embodiment of the obscene; or
(2) Presents or directs an obscene play, dance or other performance or participates directly in that portion thereof which makes it obscene; or
(3) Publishes, exhibits or otherwise makes available anything obscene; or
(4) Performs an obscene act or otherwise presents an obscene exhibition of his body for gain; or
(5) Creates, buys, procures or possesses obscene matter or material with intent to disseminate it in violation of this Section, or of the penal laws or regulations of any other jurisdiction; or
(6) Advertises or otherwise promotes the sale of material represented or held out by him to be obscene, whether or not it is obscene. (Ill. Rev. Stat. 1977, ch. 38, par. 11-20(a).)
This statute, which also includes a definition of "obscenity," has been upheld on the basis that it incorporates the Miller standards. (Ward v. Illinois (1977), 431 U.S. 767, 52 L.Ed.2d 738, 97 S.Ct. 2085, aff'g People v. Ward (1976), 63 Ill.2d 437.) This statute criminalizes those activities which offend sexual morals and which, although expressive in nature, are not protected by the first amendment since they are obscene. Ill. Ann. Stat., ch. 38, par. 11-9, Committee Comments (Smith-Hurd 1979).
In contrast, section 11-9, as we view it, is aimed at public displays which do not involve first amendment rights. Such displays may be prohibited without reference to the constitutional obscenity standard, because they do not involve primarily expressive activities. This view of the *453 statute is reinforced by the history of prosecution under it. In no reported case under section 11-9 has the State attempted to prosecute a defendant for activities within the scope of first amendment concerns. (See, e.g., People v. Giacinti (1976), 44 Ill. App.3d 699; People v. Legel (1974), 24 Ill. App.3d 554; People v. Mikota (1971), 1 Ill. App.3d 114; People v. Tudla (1969), 110 Ill. App.2d 119.) Because section 11-9 does not apply to activities that are primarily expressive in nature and which may not be prohibited absent a finding that they are obscene within the constitutional standard, defendant's contention that the statute is overbroad must be rejected.
The defendant also contends that sections 11-9(a)(3) and 11-9(b) are so vague that any prosecution under those provisions constitutes a denial of due process. The due process vagueness standard comprises three elements. First, the statute must not be so vague that men of common intelligence must necessarily guess at its meaning or application. (Smith v. Goguen (1974), 415 U.S. 566, 39 L.Ed.2d 605, 94 S.Ct. 1242; Grayned v. City of Rockford (1972), 408 U.S. 104, 33 L.Ed.2d 222, 92 S.Ct. 2294; Connally v. General Construction Co. (1926), 269 U.S. 385, 70 L.Ed. 322, 46 S.Ct. 126; People v. Palkes (1972), 52 Ill.2d 472.) Second, the statute must provide sufficiently definite standards for law-enforcement officers and triers of fact that its application does not depend merely on their private conceptions. (Grayned v. City of Rockford (1972), 408 U.S. 104, 33 L.Ed.2d 222, 92 S.Ct. 2294; Interstate Circuit, Inc. v. City of Dallas (1968), 390 U.S. 676, 20 L.Ed.2d 225, 88 S.Ct. 1298; Giaccio v. Pennsylvania (1966), 382 U.S. 399, 15 L.Ed.2d 447, 86 S.Ct. 518; People v. Pembrock (1976), 62 Ill.2d 317.) Finally, if the statute implicates first amendment expressive rights, it must not be so vague as to chill their free exercise. (Grayned v. City of Rockford (1972), 408 U.S. 104, 33 L.Ed.2d 222, 92 S.Ct. 2294.) The last element *454 need not concern us since, as we noted above, the statute at issue in this case does not impinge on first amendment rights.
Although a statute must be declared void if it does not adequately warn potential violators of the conduct proscribed or if it does not provide adequate standards for triers of fact, that determination is made in the factual context of each case in light of the facts in the case at hand where first amendment freedoms are not involved. (United States v. Mazurie (1975), 419 U.S. 544, 42 L.Ed.2d 706, 95 S.Ct. 710.) In such cases the underlying requirement of due process is that an individual cannot be held to have violated a statute unless he could reasonably be expected to understand that his particular conduct was proscribed. (Bouie v. City of Columbia (1964), 378 U.S. 347, 12 L.Ed.2d 894, 84 S.Ct. 1697; United States v. Harriss (1954), 347 U.S. 612, 98 L.Ed. 989, 74 S.Ct. 808.) A defendant therefore may be prosecuted under a statute without violating his due process rights if his conduct clearly falls within the statutory proscription even though the statute may be vague as to other conduct. Smith v. Goguen (1974), 415 U.S. 566, 39 L.Ed.2d 605, 94 S.Ct. 1242; Dombrowski v. Pfister (1965), 380 U.S. 479, 14 L.Ed.2d 22, 85 S.Ct. 1116; United States v. National Dairy Products Co. (1963), 372 U.S. 29, 9 L.Ed.2d 561, 83 S.Ct. 594; United States v. Raines (1960), 362 U.S. 17, 4 L.Ed.2d 524. 80 S.Ct. 519; United States v. Harriss (1954), 347 U.S. 612, 98 L.Ed. 989, 74 S.Ct. 808; People v. Vandiver (1971), 51 Ill.2d 525.
The specific parts of section 11-9 which the defendant is charged with violating provide:
"(a) Any person of the age of 17 years and upwards who performs any of the following acts in a public place commits a public indecency:
* * *
(3) A lewd exposure of the body done with intent *455 to arouse or to satisfy the sexual desire of the person;
* * *
(b) `Public place' for the purposes of this Section means any place where the conduct may reasonably be excepted to be viewed by others." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 38, pars. 11-9(a)(3), 11-9(b).
The defendant contends that the statutory definition of "public place" is unconstitutionally vague because the use of the word "excepted" renders it unintelligible, or alternatively, if "excepted" is read as "expected," because the definition is otherwise inadequate. We believe that the legislature clearly intended to use the word "expected." As passed by the General Assembly the bill containing section 11-9 contained the word "expected" (1961 Ill. Laws 1983, 2008), as did a subsequent amendment reproducing the entire section for the purpose of showing changes (1972 Ill. Laws 1717, 1724). The committee comments also indicate that the legislature intended to use "expected." (Ill. Ann. Stat., ch. 38, par. 11-9, Committee Comments, at 304 (Smith-Hurd 1979).) Moreover, both of the statutory compilations footnote the word "excepted" in the statute and indicate that it should probably read "expected." (Ill. Rev. Stat. 1977, ch. 38, par. 11-9(b); Ill. Ann Stat., ch. 38, par. 11-9(b) (Smith-Hurd 1979).) The transposition apparently occurred during the enrolling and engrossing process and passed unnoticed. The cardinal rule of statutory construction is to effectuate the intent of the legislature. (Carey v. Elrod (1971), 49 Ill.2d 464, 471; People ex rel. Community High School District No. 231 v. Hupe (1954), 2 Ill.2d 434.) When necessary to achieve that goal a court may alter, supply or modify words and correct obvious mistakes. (Community Consolidated School District No. 210 v. Mini (1973), 55 Ill.2d 382, 386-87; Du Bois v. Gibbons (1954), 2 Ill.2d 392; People ex rel. Barrett v. Anderson (1947), 398 Ill. 480.) We therefore interpret the statute as though it contained the *456 word "expected." This construction does not affect the validity of this prosecution because the presence of the footnotes in both of the statutory compilations adequately warned the defendant of the intention of the legislature.
Nor do we believe that the statutory definition of "public place" is otherwise overly vague. Although the facts have not yet been fully developed in this case, the allegations in the information charging the defendant indicate that the defendant's activities occurred in a place that falls squarely within the statutory definition of a "public place." If the facts adduced at trial substantiate the allegations, the situation would be one in which the defendant could clearly expect to be seen by others. Hypothetical situations might be conceived in which neither a defendant nor a trier of fact could reasonably determine whether the conduct occurred in a public place as defined by the statute, but those cases are not before us now and the defendant is not entitled to raise them. Moreover, the legislature has provided a reasonable definition of "public place" which should not be invalidated merely because it attempts to define that expression rather than to list every location which may be a "public place". Cf. People v. Parkins (1979), 77 Ill.2d 253.
Similar considerations also lead us to reject defendant's contention that the statutory expression "lewd exposure" is unconstitutionally vague. The information charged the defendant with exposing his sex organ, conduct which clearly constitutes a lewd exposure, and he may not pose hypothetical situations in which the statutory standards might conceivably be unconstitutionally vague. Furthermore, such situations are highly unlikely. The common understanding of expressions like "lewd exposure" indicates, in the words of the Supreme Court of Washington, "a lascivious exhibitions of those private parts of the person which instinctive modesty, human decency, or common propriety require shall be customarily kept *457 covered in the presence of others." (State v. Galbreath (1966), 69 Wash.2d 664, 668, 419 P.2d 800, 803; see also Hoffman v. Carson (Fla. 1971), 250 So.2d 891, appeal dismissed (1971), 404 U.S. 981, 30 L.Ed.2d 365, 92 S.Ct. 453; State v. Borchard (1970), 24 Ohio App.2d 95, 264 N.E.2d 646, cf. Commonwealth v. Heinbaugh (1976), 467 Pa. 1, 354 A.2d 244.) These areas include the genitals, buttocks and female breasts. The area which the defendant is charged with exposing clearly falls within this categorization.
Defendant also contends that the statutory scienter requirement, "intent to arouse or to satisfy the sexual desire of the person," is unconstitutionally vague, but this contention is without merit. The standard is clearly stated. This provision requires that the accused have intended to arouse or satisfy himself by exposing himself to others. It therefore precludes prosecution under section 11-9(a)(3) for mere inadvertent or accidental exposure. The actual intent of the defendant may, of course, be inferred by the trier of fact from the surrounding circumstances, and that evaluation is subject to judicial review.
The defendant's equal protection argument is equally unmeritorious. Its gist is that the prosecution of some defendants under the obscenity statute (Ill. Rev. Stat. 1977, ch. 38, par. 11-20) while others are prosecuted under section 11-9 unfairly burdens those who fall into the latter category because the elements of the obscenity offense are more narrowly drawn and more difficult to prove. As defendant acknowledges in his brief, however, the statutory classification need only be rationally related to a legitimate State purpose to satisfy the equal protection standard. (Weber v. Aetna Casualty & Surety Co. (1972), 406 U.S. 164, 31 L.Ed.2d 768, 92 S.Ct. 1400.) The purpose of the standards in the obscenity statute is to protect first amendment rights, certainly a legitimate *458 governmental objective. The Supreme Court has held that they adequately serve that purpose. (Ward v. Illinois (1977), 431 U.S. 767, 52 L.Ed.2d 738, 97 S.Ct. 2085.) We do not disagree.
For the aforementioned reasons we reverse the judgment of the circuit court and remand the cause for further proceedings.
Reversed and remanded.