(No. 71580.—)

OPYT'S AMOCO, INC., *et al.*, Appellants, v. THE VIL-
LAGE OF SOUTH HOLLAND *et al.*, Appellees.

*Opinion filed June 25, 1992.*

BILANDIC and FREEMAN, JJ., took no part.

HEIPLE, J., dissenting.

Bruce M. Bozich and Clifford Lee Gunter, of South Holland, for appellants.

Michael J. Marovich and Ronald Buikema, of Buikema, Hiskes, Dillner, O'Donnell & Marovich, Ltd., of South Holland, for appellees.

JUSTICE CLARK delivered the opinion of the court:

This case involves two separate actions filed in the circuit court of Cook County and consolidated in the appellate court. In appellate case number 89—2691, a group of businesses operating in the Village of South

Holland (the Village) filed a declaratory judgment action against the Village seeking to declare its Sunday Closing Ordinance (the ordinance) unconstitutional. Each member of the plaintiff's group had previously been cited for violating the ordinance. The plaintiffs' group included Opyt's Amoco; I-80 Investments Company, d/b/a Truck-o-mat; Linge, Ltd., d/b/a Calumet Auto Truck Plaza; Kar Kleen Kwik Stop, Inc., d/b/a Kar Kleen Car Wash; and George Graske, d/b/a Quick Six Amoco. The parties filed cross-motions for summary judgment. The trial court denied the plaintiffs' motion and granted the Village's motion.

In appellate case number 89—2908, the Village filed a quasi-criminal complaint against defendant Kar Kleen Kwik Stop, Inc., d/b/a Kar Kleen Car Wash, alleging a violation of the Sunday Closing Ordinance. The complaint alleged that defendant illegally sold cigarettes and car washes on Sunday, October 30, 1988. After a bench trial, defendant was convicted on each count and fined $100.

The appellate court affirmed the trial court's judgments in each instance. (209 Ill. App. 3d 473.) We granted plaintiffs' petition for leave to appeal (134 Ill. 2d R. 315).

The most pertinent sections of the ordinance in question provide:

"(a) Wholesale and retail mercantile and merchandising establishments. It shall be unlawful for any person to engage in the business of selling, dispensing, renting or distributing, at wholesale or retail, goods, wares or merchandise of any kind or description from an established place of business on [Sunday] within the village, provided that this subsection shall not be applicable to works of charity or to the sale of drugs or medicine, the sale or dispensing of articles of food and drink for human consumption from vending machines, the sale or dispensing of articles of food and drink for human consumption from

premises whose sole purpose is the daily preparation of food and drink for retail sale to the public, the intent being to allow food and drink dispensing from retail establishments that are commonly known as restaurants, provided further that the sale of said food and drink shall not be allowed from a drive-through facility on Sunday and all drive-through facilities dispensing food and drink shall remain closed, the sale and distribution of newspapers and magazines, the sale of milk, ice cream, ice, gasoline, lubricating oil, or the sale of articles and products necessary to meet the emergency needs of the public on Sunday in the village.

\* \* \*

(c) Repair and Maintenance Work. It shall be unlawful for any person, firm, corporation or association to engage in the business of repairing, maintaining, renovating, rehabilitating, cleaning, or washing property of any kind or description, from an established place of business, on [Sunday] within the Village of South Holland; provided, however, that this section shall not be applicable to works of charity or to the emergency repair of motor vehicles, public transportation equipment, or to the repair or maintenance of property necessary to meet the emergency needs of the public on Sunday in the Village of South Holland." (Code of the Village of South Holland, art. I, §§9—3(a), (c).)

Other sections contain similar provisions relating to construction and maintenance work (section 9—3(b)), and personal services (section 9—3(d)).

Plaintiffs claim that the ordinance is an unauthorized assertion of the Village's police power. Pursuant to its police power, a municipality has the power to "restrict or prohibit the exercise of a legitimate trade where it is necessary for the protection of the public health, morals, safety or welfare." (*Figura v. Cummins* (1954), 4 Ill. 2d 44.) In order to constitute a valid exercise of the police power, an ordinance must bear a reasonable relationship to the public interest sought to be protected and the

means adopted must be a reasonable method of accomplishing the chosen objective. *Crocker v. Finley* (1984), 99 Ill. 2d 444.

Due process requirements prevent the arbitrary and unreasonable exercise of the police power. (*Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 453.) Thus, "[w]here a prohibitory ordinance embraces activities or businesses having no effect upon the relevant object of the police power, it cannot be sustained." (*Pacesetter Homes, Inc. v. Village of South Holland* (1959), 18 Ill. 2d 247, 255.) Once the legislature identifies a problem and enacts legislation to protect and promote the general welfare of its citizens, the legislation is presumed to be a valid exercise of the police power. (*Illinois Gamefowl Breeders*, 75 Ill. 2d at 453.) Nevertheless, it remains within the province of the court to determine whether the police power was properly exercised. *Figura*, 4 Ill. 2d at 49.

This court has long recognized the power of the legislature to enact a comprehensive Sunday closing law under the general welfare branch of the police power. (See *McPherson v. Village of Chebanse* (1885), 114 Ill. 46.) In upholding a Sunday closing law, this court has previously stated:

> "Sunday has been observed traditionally as a day on which the normal, nonessential, nonemergency activity of the business world ceases. This has been achieved primarily by voluntary compliance with custom, but it is everywhere recognized that legislative bodies may properly act to preserve this deep-rooted, nation-wide custom, providing only that the measures adopted are reasonable." *Humphrey Chevrolet, Inc. v. City of Evanston* (1955), 7 Ill. 2d 402, 405.

Given the fact that the ordinance is directed at promoting a legitimate governmental interest, the issue in this case concerns the means adopted to achieve this

goal. In *Humphrey Chevrolet*, this court noted that Sunday closing laws may generally be placed into three categories. The first type prohibits only certain types of businesses from operating, but permits others to remain open. This type of statute is generally disfavored. (See *Eden v. People* (1896), 161 Ill. 296 (where this court invalidated a statute which required barbershops to close on Sundays, but permitted other businesses to remain open).) The second category, which is also generally disfavored, prohibits commercial activity in general, but exempts certain businesses from the prohibition. (See *City of Mt. Vernon v. Julian* (1938), 369 Ill. 447 (where this court invalidated an ordinance which prohibited commercial activity on Sunday, but exempted "hotels, restaurants, eating places, drug stores, tobacco stores, confectionary stores, news dealers, ice dealers, shoe shining parlors, garages, gasoline filling stations, telephone exchanges, telegraph offices and moving picture theatres").) The third category, referred to as "commodity-type" laws, prohibits all commercial activities but exempts the sale of certain commodities from the operation of the law. This court has previously approved commodity-type laws. See *Humphrey Chevrolet*, 7 Ill. 2d 402.

The ordinance in this case is a commodity-type ordinance similar to the ordinance this court upheld in *Humphrey Chevrolet*. In fact, the only significant difference between section 9—3(a) and the Evanston ordinance considered in *Humphrey Chevrolet* is that section 9—3(a) permits the sale of food and drink for human consumption from vending machines and from take-out restaurants, whereas the ordinance in *Humphrey Chevrolet* exempted the sale of food and drink for consumption on the seller's premises only. Thus, at least with respect to section 9—3(a), the pivotal question in this case is

whether these additional exceptions contained in the ordinance render it unreasonable and arbitrary.

Plaintiffs argue that the ordinance is invalid because these additional exceptions prevent the ordinance from accomplishing its purported objective. "It is apparent that if a general Sunday closing ordinance is to be [upheld] *** the exceptions to its operation must bear some reasonable relationship to the public health, safety, morals or general welfare ***." (*City of Mt. Vernon*, 369 Ill. at 453.) Plaintiffs contend that permitting businesses to remain open, but limiting the goods they can sell, does nothing to promote peace and quiet. Plaintiffs further contend it is arbitrary to permit a merchant to sell food and drink from a vending machine but not "over the counter," and to permit the sale of prepared food from a take-out restaurant but prohibit the sale of similar food from a store.

Plaintiffs argue that this court's opinion in *City of Chicago v. Netcher* (1899), 183 Ill. 104, is directly on point and, therefore, that we should reverse based on that case. In *Netcher*, this court invalidated two Chicago ordinances designed to prohibit certain commercial activities by "department stores." The first ordinance prohibited the sale of "meat, fish, butter, cheese, lard, vegetables or any other provisions" from any store which sold "dry goods, clothing, jewelry and drugs" (*Netcher*, 183 Ill. at 108). The second ordinance prohibited the sale of intoxicating liquors from any store which sold "dry goods, clothing, jewelry or hardware" (*Netcher*, 183 Ill. at 112). This court invalidated the ordinances because they were prohibitions which had no relation to any legitimate public interest. In so finding, the court noted that "[n]o attempt is made to suggest any grounds upon which the ordinance can be justified as an exercise of the police power of the city or the State." (*Netcher*, 183 Ill. at 111.) The prohibitions in *Netcher* applied at all times

and prevented only a limited class of businesses from selling the proscribed products. In contrast, the ordinance in the present case applies to all similarly situated businesses and then only on Sundays. Thus, *Netcher* is distinguishable.

Plaintiffs also rely on this court's opinion in *Pacesetter Homes, Inc. v. Village of South Holland* (1959), 18 Ill. 2d 247. In that case, this court invalidated the Village's previous Sunday closing law because it prohibited harmless as well as harmful businesses. (*Pacesetter*, 18 Ill. 2d at 255.) In *Pacesetter*, the ordinance prohibited all business activity except "medical, dental and funeral facilities, public transportation and utilities, and activities necessary for 'emergency needs' of the village residents." (*Pacesetter*, 18 Ill. 2d at 249-50.) Thus, unlike the ordinances in *Humphrey Chevrolet* and the present case, the ordinance in *Pacesetter* was not a commodity-type law. Indeed, in *Pacesetter* this court distinguished *Humphrey Chevrolet* on the basis that the *Pacesetter* ordinance was more restrictive than the ordinance approved in *Humphrey Chevrolet*. As previously noted, the current ordinance is less restrictive than the ordinance in *Humphrey Chevrolet*. Thus, we find *Pacesetter* is distinguishable and rely instead upon this court's holding in *Humphrey Chevrolet*.

Under *Humphrey Chevrolet*, we believe the ordinance is a reasonable exercise of the Village's police powers despite the exceptions contained in the ordinance. The ordinance strikes a balance between the public benefits of peace and quiet on the one hand and the ability to purchase food, drink and other necessities on the other hand. To promote peace and quiet, the ordinance limits the types of goods available for sale to the public. In this way, the ordinance decreases the amount of automobile traffic because fewer citizens will travel to the stores to purchase goods. At the same time, the ordinance permits

limited access to specified goods. As the Supreme Court stated in the case of *McGowan v. Maryland* (1961), 366 U.S. 420, 6 L. Ed. 2d 393, 81 S. Ct. 1101:

> "[A] legislature could reasonably find that the Sunday sale of the exempted commodities was necessary either for the health of the populace or for the enhancement of the recreational atmosphere of the day—that a family which takes a Sunday ride into the country will need gasoline for the automobile and may find pleasant a soft drink or fresh fruit \*\*\* that newspapers and drug products should always be available to the public." *McGowan*, 366 U.S. at 426, 6 L. Ed. 2d at 399, 81 S. Ct. at 1105.

In balancing these somewhat competing public benefits, the legislature could reasonably find that the sale of food and drink from a vending machine is less likely to increase automobile traffic than is the sale of the same goods over the counter. For example, the legislature could determine that citizens will be less likely to make a special trip to purchase food or drink if these products must be purchased from a vending machine. Thus, we do not believe the vending machine exception renders the ordinance arbitrary.

Nor do we believe the ordinance is arbitrary because it permits the sale of prepared food and drink from a restaurant but not from other businesses. Plaintiff Opyt's Amoco contends that it is arbitrarily prevented from selling prepackaged hamburgers on Sunday while a local McDonald's restaurant is permitted to sell similar products. The legislature could legitimately decide that the sale of food and drink from restaurants would enhance the recreational atmosphere of the day. (*McGowan*, 366 U.S. at 426, 6 L. Ed. 2d at 399, 81 S. Ct. at 1105.) At the same time, the legislature could legitimately decide that prepared foods should be available from restaurants only. See *Gallagher v. Crown Kosher Super Market* (1961), 366 U.S. 617, 623, 6 L. Ed. 2d

536, 540, 81 S. Ct. 1122, 1125 (where the Court stated, "[T]he legislature could determine that, although many retailers, including Crown, sell frozen desserts, to permit only a limited number of inn-holders, druggists and common victuallers to sell them on Sunday would serve the public purpose of providing these items on Sunday and, at the same time, limit the commercial activities ordinarily attendant to their sale").

A court will uphold a legislative classification against an equal protection challenge if any set of facts can be reasonably conceived which will sustain the classification. (*Village of Oak Lawn v. Rosewell* (1986), 113 Ill. 2d 104.) In this case, such a conceivable set of facts exists. In *Humphrey Chevrolet*, this court approved an ordinance which excepted the sale of food and drink to be consumed on the seller's premises. Given the nature of the modern fast-food business, it would be extremely difficult for restaurants to monitor whether food would be eaten on the premises or taken out. The legislature could have legitimately decided it would be impractical to require prepared food and drink be consumed on the seller's premises. Instead, the ordinance requires that all drive-through facilities at restaurants in the Village be closed on Sunday. We hold the restaurant exception in the ordinance is a reasonable exercise of the Village's police power. In so holding, we note that the ordinance does not discriminate between similarly situated businesses.

Similarly, we do not believe it is arbitrary for the legislature to permit the sale of some products from a store but not other products. Under plaintiffs' argument, a grocery store which is permitted to sell milk must also be permitted to sell any other product in its inventory. Under this scenario, the exception would swallow the rule and, thereby, defeat the purpose of the ordinance.

Further, under plaintiffs' argument, almost every Sunday closing law in this State would be invalid.

We have found that the ordinance promotes a legitimate governmental objective. We have also concluded that the ordinance is a reasonable means of accomplishing this governmental objective. Thus, we hold that the ordinance also meets the requirements of the equal protection and due process clauses of the United States and Illinois Constitutions. See *Bernier v. Burris* (1986), 113 Ill. 2d 219 (holding the appropriate test under the due process clause for a statute which does not impact a fundamental right is whether the legislation bears a rational relationship to a legitimate governmental interest); *People v. Anderson* (1986), 112 Ill. 2d 39 (holding the equal protection clause prevents purposeful or invidious discrimination).

Although our discussion has focused on section 9—3(a) of the ordinance, our findings apply with equal force to the remainder of the ordinance. We have reviewed the ordinance in its entirety and find that it is a reasonable means of promoting a legitimate governmental objective. Further, we find the exceptions contained in the ordinance do not render the ordinance arbitrary.

Finally, plaintiffs also contend the ordinance is unconstitutionally vague because it does not define the terms "necessary" and "emergency." Plaintiffs point to an affidavit submitted with their motion for summary judgment in which a diabetic woman stated she attempted to purchase orange juice and cheese for health purposes. Plaintiffs argue that it is unclear from the ordinance whether the sellers of these products in that situation would be subject to prosecution. In addition, plaintiffs argue it is unclear under what circumstances a truck wash would be necessary to meet the emergency needs of the public.

Due process requires that a statute must not be "so vague that men of common intelligence must necessarily guess at its meaning or application." (*People v. Garrison* (1980), 82 Ill. 2d 444, 453.) In addition, "the statute must provide sufficiently definite standards for law enforcement officers and triers of fact that its application does not depend merely on their private conceptions." (*Garrison,* 82 Ill. 2d at 453.) To satisfy the requirements of due process, a statute's prohibitions must be sufficiently definite when measured by common understanding and practices. (*People v. Wawczak* (1985), 109 Ill. 2d 244, 249.) However, as we are "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned v. City of Rockford* (1972), 408 U.S. 104, 110, 33 L. Ed. 2d 222, 228-29, 92 S. Ct. 2294, 2300.

We note that all statutes are presumed to be constitutional (*People v. Schwartz* (1976), 64 Ill. 2d 275, 281), and the party challenging the statute has the burden of clearly establishing its constitutional infirmity (*People v. Bales* (1985), 108 Ill. 2d 182, 188). In considering a vagueness challenge to a statute, absent a contrary legislative intent, a court will assume "the words used in the statute have their ordinary and popularly understood meanings. [Citations.] In addition to the language used, consideration [will] also [be] given to the legislative objective and the evil the statute is designed to remedy." (*People v. La Pointe* (1981), 88 Ill. 2d 482, 499.) Whenever possible, each word or phrase in a challenged statute will be given some reasonable meaning.

"Emergency" has been defined as:

"A sudden unexpected happening; an unforeseen occurrence or condition; perplexing contingency or complication of circumstances; a sudden unexpected occasion for action; exigency; pressing necessity. Emergency is an unforeseen combination of circumstances that calls for

immediate action." (Black's Law Dictionary 272 (5th ed. 1979).)

We believe this definition comports with the common understanding of "emergency." Further, we believe that as used in the ordinance "necessary" means that which is reasonably required. Thus, the use of these terms in the ordinance does not render the ordinance unconstitutionally vague.

For the foregoing reasons, we affirm the judgment of the appellate court.

*Judgment affirmed.*

JUSTICES BILANDIC and FREEMAN took no part in the consideration or decision of this case.

JUSTICE HEIPLE, dissenting:

The plaintiffs in this case consist of several businesses within the municipal limits of the Village of South Holland. Opyt's Amoco is a gas/service station. Opyt's regularly engages in the sale of gasoline, automobile products and repairs, snack food items, newspapers, cigarettes, lottery tickets, and the rental of video cassettes. Kar Kleen is a coin operated, fully automated car wash. Amoco Food Shop is a gas station/mini-mart which regularly sells prepackaged hamburgers and sandwiches, chips, various beverages and a variety of other food items. Calumet Plaza is a truck stop which is located adjacent to Interstate 94 and U.S. Route 6. In addition to the selling of gasoline, diesel fuel, and automotive products, the truck stop consists of a retail store, a restaurant, and an automotive garage. The truck stop is on the east side Interstate 94. The nearest residentially zoned property is between one-fourth to one-half of a mile away and is on the west side of Interstate 94. Truck-o-mat, similarly to Calumet Plaza, is also located on the east side of Interstate 94, at the confluence of U.S.

Route 6 and Interstate 94. The primary business of Truck-o-mat is the sale of gasoline, diesel fuel, and truck washes. The above plaintiffs seek to have the Village of South Holland's Sunday Closing Ordinance declared unconstitutional. The trial court granted summary judgment in favor of the Village, and both the appellate court (209 Ill. App. 3d 473) and the majority of this court affirm.

The plaintiffs' activities which constituted a violation of the ordinance included the following: renting video cassettes; washing vehicles; and selling pretzels, cigarettes, crackers, cinnamon rolls, and charcoal. The ordinance, *inter alia*, prohibits the selling of goods of any kind on Sunday. However, there are numerous exceptions. Vending machines may be operated on Sunday and while restaurants may be open, their drive-through facility must be closed. Items which have been specifically declared exempt, and may therefore be sold on Sunday, include newspapers, magazines, milk, ice, ice cream, gasoline, lubricating oil, and goods necessary due to an emergency. The ordinance also prohibits, except on an emergency basis, the engaging in the business of repairing, maintaining or washing of any property on Sunday. Code of the Village of South Holland, art. I, §§9—3(a), (c).

As the majority correctly pointed out, in order for this type of ordinance to be found constitutional it must have a legitimate governmental purpose and the means adopted to achieve this purpose must be rational. (149 Ill. 2d 270-71.) It is unclear from the majority opinion whether they view the ordinance as furthering the notion that Sunday should be a general day of rest or whether the ordinance's goal is to allow individuals to worship free from disturbance. (See *Courtesy Motor Sales v. Ward* (1962), 24 Ill. 2d 82, 85; *Pacesetter Homes, Inc. v. Village of South Holland* (1959), 18 Ill. 2d

247, 255.) Regardless, the ordinance, in my opinion, fails to rationally achieve either of these potential goals.

The majority feels that the ordinance with its specified exceptions "strikes a balance between the public benefits of peace and quiet on the one hand and the ability to purchase food, drink and other necessities on the other hand." (149 Ill. 2d at 273.) Contrary to this view, I believe that the plethora of exceptions are essentially devoid of reason and foster disrespect for the law. Even more telling of the unsteady foundation upon which the ordinance rests is an examination of its numerous incongruities. Cigarettes may be sold from vending machines but may not be sold over the counter. Milk may be sold, but orange juice, tea and even bottled water, may not. Ice cream may be sold but cookies may not. A motorist is allowed a fill-up of gasoline but it is unclear at best whether a motorist requiring diesel fuel may also obtain a fill-up. Newspapers and magazines, presumably including sexually explicit magazines, may be sold, but books, which would necessarily include the Bible, may not. Prepackaged food, such as a ready-to-eat hamburger, may be sold from restaurants, but other businesses, which are not exclusively restaurants, may not sell prepackaged food over the counter. Finally, restaurants are allowed to sell "take-out," but are not allowed to accept the order through drive-through windows.

The ordinance as drafted serves no legitimate governmental purpose. It bears no relationship to the protection of the public health, morals, safety or welfare. No reasonable public interest is protected. Rather, it represents an arbitrary and unreasonable exercise of the police power. Its distinctions between what can be sold and what cannot be sold are, in fact, ridiculous. Only a judge or lawyer could read it without laughing. This ordinance should be found unconstitutional under the due process clause of the Illinois Constitution (Ill. Const. 1970, art. I,

§2). Sad to say, this case offered the unfortunately ignored opportunity for this court to reconsider its earlier decisions which defined and allowed Sunday closing laws to survive constitutional challenge. The observance of a specific day of rest or worship is a personal and individual matter. There is no basis for imposing governmental sanctions to enforce such customs. A closer examination of Sunday closing laws beneath their surface would reveal that they are principally a device to protect merchants who do not want to stay open on Sunday from competition from those that do. As such, they are simultaneously hypocritical and violative of due process.

Accordingly, I respectfully dissent from the decision of the court.