Aldo Mario LOVISI and Margaret
Lovisi, Appellants,

v.

A. E. SLAYTON, Jr., Superintendent,
Leake Parrish, Superintendent,
Appellees.

No. 73–2337.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 11, 1975.

Decided May 12, 1976.

Harvey Bines, Charlottesville, Va., and Richard E. Crouch, Arlington, Va. (Court-appointed), for appellants.

John F. Mark, Richard H. Cornfield, and Steven V. R. Whitman (third year law student) on brief for amicus curiae for The American Civil Liberties Union Foundation.

Robert E. Shepherd, Jr., Special Counsel, Richmond, Va. (Andrew P. Miller, Atty. Gen. of Virginia, and Jim L. Chin, Asst. Atty. Gen. of Virginia, Richmond, Va., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, BOREMAN, Senior Circuit Judge, and WINTER, CRAVEN, BUTZNER, RUSSELL, FIELD and WIDENER, Circuit Judges, Sitting *En Banc,* on Resubmission.

HAYNSWORTH, Chief Judge.

The petitioners in this habeas corpus proceeding, Aldo and Margaret Lovisi, husband and wife, were convicted in the state court of sodomy with each other in violation of Va.Code Ann. § 18.1–212.[1] They challenged the constitutionality of the statute, as applied to them, through the state court system and then sought federal habeas corpus relief. After a hearing, the district judge concluded that the Lovisis had waived their constitutional right to privacy in their marital conduct and, consequently, their right to contest their state convictions of sodomy with one another by carelessly exposing erotic photographs to Mrs. Lovisi's young daughters. *Lovisi v. Slayton,* 363 F.Supp. 620 (E.D.Va.1973). We affirm.

From time to time the Lovisis had placed advertisements in a magazine, "Swinger's Life," in which they sought contact with others interested in erotic sexual experiences. Earl Romeo Dunn answered one such advertisement, and the three met together on three occasions. The last occasion was in the Lovisis' home in Virginia Beach, Virginia. The three engaged in sexual activity in the Lovisis' bedroom, during which Margaret Lovisi performed fellatio upon her husband and upon Dunn. Polaroid pictures were made of this activity, and Mrs. Lovisi's daughters by a former marriage, then 13 and 11 years old, testified that they were present in the bedroom at the time, described what they saw and testified that they took the Polaroid pictures. Dunn[2] and Lovisi denied the presence of the young girls and testified that they took the pictures, sometimes with the aid of a time-delay device.

The general verdict of guilty in the state court did not resolve the dispute in the testimony about the presence of the young girls and their taking the pictures. The district judge was disinclined to accept the disputed testimony of the girls, but he did find that the Lovisis had relinquished their right of privacy by carelessly exposing pictures of their sexual activity to the girls. The entire matter had come to light when one of the girls appeared in school with a picture, subsequently destroyed, said to have been of her and of an adult male, both

1. Section 18.1–212. *Crimes against nature.*—If any person shall carnally know in any manner any brute animal, or carnally know any male or female person by the anus or by or with the mouth, or voluntarily submit to such carnal knowledge, he or she shall be guilty of a felony and shall be confined in the penitentiary not less than one year nor more than three years.

2. Dunn testified for the prosecution. His participation in the incident, however, resulted in his deportation to his native Jamaica.

completely unclothed. This resulted in the execution of a search warrant, and the policeman testified that hundreds of erotic pictures were found in the house. Lovisi, however, testified that the pictures taken of himself and his wife and their companions were kept in a box in a gun cabinet which, as described by him, was quite insecure, and these were among the pictures seized by the police.

■ The Constitution recognizes a right of privacy with respect to those rights regarded as "fundamental" or "implicit in the concept of ordered liberty." *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). The personal intimacies of marriage, the home, procreation, motherhood, childbearing and the family have been held "fundamental" by the Supreme Court and, hence, have been encompassed within the protected rights of privacy.[3] We may thus assume that the marital intimacies shared by the Lovisis when alone and in their own bedroom are within their protected right of privacy. What they do in the privacy of the marital boudoir is beyond the power of the state to scrutinize. The question we face, however, is whether they preserve any right of privacy when they admit others to observe their intimacies.

Married couples engage in acts of sexual intimacy. That they do is no secret. Though they converse with friends or write books about their sexual relations, recounting in explicit detail their own intimacies and techniques, they remain protected in their expectation of privacy within their own bedroom. State law protects them from unwelcome intruders, and the federal constitution protects them from the state in the guise of an unwelcome intruder.

■ What the federal constitution protects is the right of privacy in circumstances in which it may reasonably be expected.[4] Once a married couple admits strangers as onlookers, federal protection of privacy dissolves. It matters not whether the audience is composed of one, fifty, or one hundred, or whether the onlookers pay for their titillation. If the couple performs sexual acts for the excitation or gratification of welcome onlookers, they cannot selectively claim that the state is an intruder. They possess the freedom to follow their own inclinations in privacy, but once they accept onlookers, whether they are close friends, chance acquaintances, observed "peeping Toms" or paying customers, they may not exclude the state as a constitutionally forbidden intruder.

■ The answer to the question when the right of privacy is lost cannot turn upon numbers, preserved, if there is one onlooker or two, but not if there are three, or preserved if there are ten, but not if there are eleven. Nor should it turn upon the fact that the onlookers, however many, are not only passive observers but are participants themselves in sexual activity, some of it with one or more of the partners to the marriage. In either such event, the married couple has welcomed a stranger to the marital bedchamber, and what they do is no longer in the privacy of their marriage.

■ The presence of the onlooker, Dunn, in the Lovisis' bedroom dissolved the reasonable expectation of privacy shared by

---

3. Cf. *Eisenstadt v. Baird,* 405 U.S. 438, 453–454, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); id., at 460, 463–465, 92 S.Ct. 1029 (White, J. concurring); *Stanley v. Georgia,* 394 U.S. 557, 568, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Loving v. Virginia,* 388 U.S. 112, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *Griswold v. Connecticut,* 381 U.S. 479, 486, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); *Pierce v. Society of Sisters,* 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

4. *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 68 & n. 15, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *Roe v. Wade,* 410 U.S. 113, 154–155, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Katz v. United States,* 389 U.S. 347, 351–352, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *People v. Parker,* 33 Cal.App.3d 842, 109 Cal.Rptr. 354, 358 (1973); *Chesebrough v. State,* 255 So.2d 675, 679 (Fla. 1971).

the Lovisis when alone. Hence, we affirm the district court's refusal to issue the writ.

*AFFIRMED.*

## ADDENDUM

After this opinion was prepared and circulated, but before it was filed, the Supreme Court summarily affirmed a decision of a statutory three-judge court dealing with this same statute as applied to adult homosexuals alleging that they were engaged in homosexual activity in private. *Doe v. Commonwealth's Attorney for City of Richmond,* E.D.Va., 403 F.Supp. 1199, affirmed, —— U.S. ——, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976).

In upholding the statute as applied to homosexual acts between two consenting adults in private places, the Supreme Court necessarily confined the constitutionally protected right of privacy to heterosexual conduct, probably even that only within the marital relationship. At least it reinforces our conclusion that the oral sexual activity of the Lovisis in the presence of Dunn and a camera was not within the area of the constitution's protection.

WINTER, Circuit Judge, with whom CRAVEN and BUTZNER, Circuit Judges, concur (dissenting):

We accept as settled law the majority's assumption that marital intimacies shared by the Lovisis when alone and in their own bedroom are within their protected right of privacy. We reject, however, the majority's implied premise that this marital right of privacy is restricted to those situations in which it is enjoyed in secret. In this regard, the majority's opinion is unsupported either by reason or by authority. We would hold that vis-a-vis one another, Aldo and Margaret Lovisi, as husband and wife, cannot constitutionally be guilty of sodomy in violation of Va.Code Ann. § 18.1–212, by reason of consensual sexual intimacies of whatever nature, whether practiced in secret or in the presence of a third party or a camera; and therefore the judgment of the district court should be reversed, with a direction to issue the writ. From the ma-

jority's contrary conclusion, we respectfully dissent.

### I.

The majority's opinion states the facts sufficiently. We stress that the only issue before us is whether Aldo and Margaret Lovisi, husband and wife, may be criminally punished for consensual sodomitic acts performed on each other in the presence of Earl Romeo Dunn. Margaret Lovisi was also convicted of committing sodomy with Dunn, but the validity of that conviction is not before us. *See Lovisi v. Slayton,* 363 F.Supp. 620, 621 (E.D.Va.1973).

### II.

That there exists a marital right of privacy need not be merely assumed; it is positive law. Beginning with the early decisions of *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), which invalidated a statute regulating the teaching of modern foreign languages in schools, and *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), which invalidated a statute requiring that children be sent to public schools, the Supreme Court has gradually evolved a concept of liberty applying to family life which has elevated the marital relationship to a place of near inviolable sanctity. In *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), the Court invalidated an habitual criminal sterilization statute, noting that "[m]arriage and procreation are fundamental to the very existence and survival of the race," 316 U.S. at 541, 62 S.Ct. at 1113, and applying a strict scrutiny test to a state scheme for sterilization of some habitual criminals based on a disputed theory that criminal traits are inheritable.

The concept that a right of privacy attached to the marriage relationship was articulated by several members of the Court in *Poe v. Ullman,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), a case which concerned but did not reach the merits of Connecticut's statute prohibiting the use of contraceptives. Mr. Justice Douglas, dis-

senting, characterized the statute which "reaches to the intimacies of the marriage relationship" as "an invasion of the privacy that is implicit in a free society." 367 U.S. at 519–21, 81 S.Ct. at 1764–1765. Mr. Justice Harlan, also dissenting, described the case as one in which "the State is asserting the right to enforce its moral judgment by intruding upon the most intimate details of the marital relation with the full power of the criminal law." 367 U.S. at 548, 81 S.Ct. at 1779. For this reason, he was of the view that "[t]he statute must pass a more rigorous Constitutional test than that going merely to the plausibility of its underlying rationale. . . . This enactment involves what, by common understanding throughout the English-speaking world, must be granted to be a most fundamental aspect of 'liberty,' the privacy of the home in its most basic sense, and it is this which requires that the statute be subjected to 'strict scrutiny.'" 367 U.S. at 548, 81 S.Ct. at 1780. Mr. Justice Stewart concurred in both dissents.

In *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), the Court invalidated Connecticut's statute rendering the use or the giving of advice about the use of contraceptives a criminal offense. A majority of the Court concurred in an opinion which stated:

We deal with a right of privacy older than the Bill of Rights—older than our political parties, older than our school system. Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects. Yet it is an association for as noble a purpose as any involved in our prior decisions. 381 U.S. at 486, 85 S.Ct. at 1682.

The separate opinions filed recognized no less. Mr. Justice Goldberg said that "the right of privacy is a fundamental personal right," 381 U.S. at 494, 85 S.Ct. at 1687, and that the statutes before the Court "deal with a particularly important and sensitive

area of privacy—that of the marital relation and the marital home." 381 U.S. at 495, 85 S.Ct. at 1687. Mr. Justice Harlan restated his views in *Poe,* and Mr. Justice White treated as "belaboring the obvious, to expound on the impact of this statute on the liberty guaranteed by the Fourteenth Amendment against arbitrary or capricious denials or on the nature of this liberty." 381 U.S. at 502, 85 S.Ct. at 1691.

Following *Griswold,* the Court invalidated Virginia's statute prohibiting interracial marriage as unconstitutional under the equal protection and due process clauses of the Fourteenth Amendment, *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); and in *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), invalidated a statute which made the exhibition of contraceptives and the giving of contraceptives to an unmarried person criminal acts. The Court found an insufficient state interest, i. e., health or morals, to justify the prohibition and concluded that it denied equal protection of the laws. to unmarried persons. Although dictum, the plurality opinion of Mr. Justice Brennan said:

If under *Griswold* the distribution of contraceptives to married persons cannot be prohibited, a ban on distribution to unmarried persons would be equally impermissible. It is true that in *Griswold* the right of privacy in question inhered in the marital relationship. Yet the marital couple is not an independent entity with a mind and heart of its own, but an association of two individuals each with a separate intellectual and emotional makeup. If the right of privacy means anything, it is the right of the *individual,* married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child. 405 U.S. at 453, 92 S.Ct. at 1038.

Finally, in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), the Court recognized a related right of privacy—the right of a

woman to terminate a pregnancy by an abortion, unqualified to the end of the first trimester of pregnancy and qualified thereafter by proper state regulation to preserve the state's interest in the preservation and protection of maternal health and preservation of the life of a viable fetus.

From these cases we would conclude that certainly within the marital relationship, and perhaps in some instances even without, the nature and kind of consensual sexual intimacy is beyond the power of the state to regulate or even to inquire. If the state may not restrict marital sexual relations to those whose object or risk is that of procreation, *Griswold, supra,* we think that the state is powerless to brand as sodomitic other consensual sexual practice within the marital relationship.

### III.

Given the premise that a sufficient state interest to regulate or to inquire into consensual marital intimacies does not exist, we turn to the question of whether this marital right of privacy exists only if the consensual conduct is carried on in secrecy. We think that existence of the right is not conditioned upon secrecy.

The marital right of privacy—a term which lends itself to confusion since the term carries with it connotations of secrecy—[1] is not founded solely upon the Fourth Amendment. In Fourth Amendment cases, a voluntary relinquishment of one's reasonable expectation of secrecy, such as a consent to search, waives the right. *Cf. Poe v. Ullman,* 367 U.S. at 551–52, 81 S.Ct. 1752 (Harlan, J., dissenting). The marital right of privacy has a base broader than the Fourth Amendment alone and the cases recognizing the right pitch it on grounds

that belie that secrecy is a necessary element.

Certainly *Meyer v. Nebraska, Pierce v. Society of Sisters,* and *Skinner v. Oklahoma,* the foundations from which the right of marital privacy was developed, had nothing to do with secrecy. Their outcome depended upon the nature of the activity sought to be regulated and the relationship of that activity to a protected right. In *Griswold,* the Court invalidated Connecticut's ban on the use of contraceptives at the behest of a doctor who was permitted to assert the rights of his patients who came to him for advice about contraceptives. These patients were admitting an outsider into their marital intimacies by seeking counseling and advice about contraception, yet they were not held to have lost their right to constitutional protection. Most recently, in *Roe v. Wade,* the Court, in upholding a woman's exercise of her right to "privacy" by having an abortion, explicitly noted that "[t]he pregnant woman cannot be isolated in her privacy." 410 U.S. at 159, 93 S.Ct. at 730. Not only was the developing fetus involved, but the abortion would have to be performed by a doctor, probably with the assistance of others.

Based on these authorities, we conclude that secrecy is not a necessary element of the right and that therefore the right exists, whether or not exercised in secret.[2]

We are at a loss to understand how or why the majority concludes otherwise. Its conclusion is unsupported by any authority; nor do we think it supported by reason. The majority assumes that the Lovisis have a constitutional right to practice marital sodomy in secret, and further suggests that this right would not be lost or "waived" if they talked or wrote about their sexual activities. Presumably this protection

1. The dissenting opinion of Judge Craven well articulates this point.

2. Just as secrecy is not essential to the assertion of a "privacy" right claim, the fact that conduct is carried on in secret does not itself entitle it to protection. "[I]t would be an absurdity to suggest either that offenses may not be committed in the bosom of the family or that the home can be made a sanctuary for

crime. . . . Thus, I would not suggest that adultery, homosexuality, fornication and incest are immune from criminal enquiry, however, privately practiced." *Poe v. Ullman, supra,* 367 U.S. at 552–53, 81 S.Ct. at 1782. *See Doe v. Commonwealth's Attorney for City of Richmond,* 403 F.Supp. 1199 (E.D.Va.1975) (three-judge court), *aff'd,* 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (March 29, 1976).

would extend to non-obscene but explicit photographs and movies even if sold on a commercial basis; yet, if a husband and wife were to seek certain types of medical help in an attempt to save a marriage endangered by sexual maladjustment, or if due to economic necessity, or for any other reason, they share a bedroom with other family members, under the majority's holding the state may prosecute them for certain types of consensual marital acts. Surely these absurd results suggest that the presence of Dunn is irrelevant to the question before us. What would not be punishable sodomy in Dunn's absence is not rendered punishable sodomy by his presence, although his presence may, of course, give rise to other prosecution for other crimes.[3]

### IV.

Finally, we comment on the majority's claim of support for its holding from the recent summary affirmance in *Doe v. Commonwealth's Attorney for City of Richmond*, 403 F.Supp. 1199 (E.D.Va.1975), *aff'd*, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976). That case upheld the validity of an application of the statute with which we are concerned to consensual homosexual acts between adults in private.

The Supreme Court's affirmance was summary. While it is an adjudication on the merits of the question which was presented, *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), the basis for the Supreme Court's conclusion is necessarily obscure because it was unarticulated. The case may have been decided in contravention of the statements in some of the authorities on which we rely, thus overruling them, or it may have been decided on a narrower basis not inconsistent with them. Until the Supreme Court speaks more definitively, no one can tell. Of course, we would apply the holding in a case in which Virginia sought to punish consensual homosexual acts between adults, but we decline to go further and speculate whether it constitutes an adjudication, confirming or detracting from the principles on which we and the majority rely, or indicating what we should decide here.

### CRAVEN, Circuit Judge (dissenting):

I dissent because I think it is dangerous to withdraw from any citizen the protection of the Constitution because he or she is amoral, immoral or just plain nasty. The point I make is a factual one. It will not be understood without knowing what the case is about, and to make that clear I begin by stating what it is not about. It is *not* about group sex. It is *not* about sexual activity, deviant or otherwise, in public. The Lovisis attack their charges and convictions under a statute making their conduct *with each other while married* criminal—whether or not in public and without regard to the presence or participation of a third person.

---

**3.** We would not foreclose the possibility that even married persons may be prosecuted for sodomitic acts performed on each other in public, under a properly drawn statute which makes clear that public exposure is the gravamen of the offense. While a married couple's consensual sexual conduct itself can never be made criminal, even if carried on in public, sexual conduct may nevertheless be an element of another offense.

When the state chooses to regulate the public sexual conduct of married persons, it must choose *means* less intrusive to the marital relationship than the bald criminalization of the marital sexual intimacies themselves. In his dissenting opinion in *Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), Mr. Justice Harlan stressed that even assuming that the state was entitled to reach a moral judgment that the use of contraceptives by married couples was immoral and that the state could implement its policy by prohibiting the *sale* of contraceptives to be used by married persons, the state could not criminalize the *act* of using contraceptives:

> Though the State has argued the Constitutional permissibility of the moral judgment underlying this statute, neither its brief, nor its argument, nor anything in any of the opinions of its highest court in these or other cases even remotely suggests a justification for the obnoxiously intrusive means it has chosen to effectuate that policy. *Id.* at 554, 81 S.Ct. at 1783.

Similarly, while the state may punish *public exposure* of marital sexual conduct, it may not choose means which make the *act* of sexual conduct the dominant characteristic of the offense.

Most of the court's opinion consists of a narrative of the sort found in "adult" bookstores. Had the case been properly tried in the Virginia state court, we would not even know this sordid story because Dunn's participation is irrelevant and highly prejudicial to the question of the Lovisis' guilt of a violation of Virginia's crime against nature by their conduct *with each other*. Just as a jury cannot forget such evidence erroneously received, neither, apparently, can we.

The great freedoms enumerated in the first ten amendments are known to all Americans by name, *e. g.*, speech, press, religion, etc. What may be the greatest of all, antedating the Constitution as well as the Bill of Rights, has not yet been christened. "Liberty" is too much.

The "right of privacy," apt in some cases, is a misleading misnomer in others including this one. This freedom may be termed more accurately "the right to be let alone,"[1] or personal autonomy, or simply "personhood."[2] One thing for sure—it is not limited to the conduct of persons in private. Marriage, normally a public ceremony, is protected.[3] Mrs. Roe[4] does not lose her right to be let alone to abort because her doctor permits the intrusion of a nurse to assist him. Baird[5] may not be prosecuted for failure to be discreet and secret in lecturing students on contraception.

It is therefore unclear to me why the Lovisis forfeit their right to be let alone in their conjugal relationship because they allowed a third person to be present. The only valid reason I can think of is a moral value judgment that deviant sex is so odious[6] that not even the Constitution may be successfully interposed to protect a husband and wife so despicably disposed. However right the court may be as to morals, I do not believe it to be a proper principle of constitutional law.

If there is any more fundamental right of personhood than the conjugal relationship of husband and wife, it does not occur to me. I do not believe it to be within the power of the state to make consensual physical contact between husband and wife criminal;[7] and when convictions are predicated upon that fact alone, the writ must issue.

In order to deny the Lovisis their constitutional right to be let alone in their conduct with each other, the court has amended the indictment in the state court so as to

---

1. Mr. Justice Brandeis coined this phrase in the course of dissenting in *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928):

   The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfaction of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the Government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men. . . .

2. In his dinner address to the American Law Institute on May 23, 1975, Professor Freund said:

   The theme of personhood is . . . emerging. It has been groping, I think, for a rubric. Sometimes it is called privacy, inaptly it would seem to me; autonomy perhaps, though that seems too dangerously broad. But the idea is that of personhood in the sense of those attributes of an individual which are irreducible in his selfhood. We all know the agonizing judgments that have had to be made and that will have to be made in such diverse areas as abortion and the death penalty, which it seems to me are aspects of this issue of personhood.

3. *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).

4. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). *See also Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).

5. *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

6. Dunn's participation makes it even more odious—but that is another case. I reiterate these cases relate *only* to the Lovisis' conduct with each other.

7. Again, it is irrelevant to the Lovisis' guilt under this statute that a third person was present; the statute is violated whether or not anyone else is present.

charge the Lovisis with lewd and lascivious behavior in the presence of another and indecent exposure. I agree that they are guilty of both offenses, but I believe this court has not the power to validate convictions of offenses not charged.

I would hold that the Lovisis are protected by the right to be let alone from a conviction of violating the Virginia crime against nature statute with each other, and I would reverse and remand with instructions to issue the writ.

Judge Winter and Judge Butzner authorize me to say that they join in these views.