James DOE, et al., Plaintiffs,

v.

Frank S. DULING, et al., Defendants.

Civ. A. No. 84–0118–R.

United States District Court,
E.D. Virginia,
Richmond Division.

Feb. 27, 1985.

Michael Morchower, John B. Boatwright, III, Morchower & Luxton, Richmond, Va., for plaintiffs.

Michael L. Sarahan, James C. Wicker, Jr., Asst. Commonwealth's Atty., for the City of Richmond, Va., Richmond, Va., Linwood T. Wells, Asst. Atty. Gen. of Va., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

### I. Facts

This is an action challenging the constitutionality of Virginia's fornication and cohabitation statutes. Section 18.2–344 of the Virginia Code provides that "[a]ny person, not being married, who voluntarily shall have sexual intercourse with any other person, shall be guilty of fornication, punishable as a Class 4 misdemeanor." Section 18.2–345 punishes as a Class 3 misdemeanor "any persons, not married to each other, [who] lewdly and lasciviously associate and cohabit together [or], whether married or not, be guilty of open and gross lewdness and lasciviousness...." Plaintiffs allege that these statutes violate their "rights to privacy, freedom of association, and freedom of expression protected by the First, Fifth, Ninth and Fourteenth Amendments to the United States Constitution."

Plaintiffs are proceeding in this action under the pseudonyms of James Doe and Jane Doe. They are unmarried adults who reside in the City of Richmond, Virginia and allege to have engaged in sexual intercourse in Richmond with unmarried members of the opposite sex. They both express the desire to engage in such activity in the future and to cohabit with a member of the opposite sex "under conditions normally associated with living as husband and wife." In their depositions, both plaintiffs testified that they have not engaged in sexual intercourse since the filing of this action partly because of their fear of prosecution.

Defendant Frank Duling is the Chief of the Richmond Bureau of Police, and his co-defendant, Aubrey Davis, is the Commonwealth's Attorney for the City of Richmond.

Plaintiffs assert that this Court has jurisdiction under 28 U.S.C. §§ 1343, 2202, 2283 and has the power to grant relief pursuant to 42 U.S.C. § 1983. They request declaratory and injunctive relief. Defendants have moved for dismissal, asserting that this Court has no subject matter jurisdiction because there is no case or controversy and that plaintiffs lack standing to bring this action.

In depositions, documents, and stipulations of facts filed with the Court, it is apparent that the fornication and cohabitation statutes are enforced if complaints are received and the police at the time have available manpower to respond. Defendants assert that enforcement of these statutes has low priority, and that no complaints regarding private, consensual, non-prostitutional violations of the statutes have been responded to by the Division of the Richmond Police since 1978. Arrest

records filed with the Court, however, reveal that there have been at least eight arrests on fornication charges since 1982.

## II. Jurisdiction.

The merits of the case are legally inconsequential unless the Court has jurisdiction to adjudicate the issue. The power of the Court is limited by the "case or controversy" requirement of Article III of the Constitution; in short, the issues presented to the Court must be justiciable, and it is a determination of that question which must be addressed initially.

■ When a state statute is challenged on constitutional grounds, two major inquiries on the justiciability of the challenge are whether the litigants have standing and whether the issues raised are ripe. The requirement of standing "focuses on the party seeking to get his complaint before a federal court and not the issues he wishes to have adjudicated." *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 484, 102 S.Ct. 752, 765, 70 L.Ed.2d 700 (1982) (quoting *Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968)). "Standing," has been described by the Supreme Court as subsuming "a blend of constitutional requirements and prudential considerations." *Id.* 454 U.S. at 471, 102 S.Ct. at 758. Minimally, article III requires he who invokes the Court's authority to allege and ultimately show (a) that he personally has suffered an actual or threatened injury as a consequence of the putatively illegal conduct of the defendant, (b) that such injury may fairly be

traced to the complained of action, and finally, (c) such injury is likely to be redressed by a favorable decision. *Id.* at 475, 102 S.Ct. at 760; *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979); *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1926, 48 L.Ed.2d 450 (1976). "Ripeness," which can be viewed in part as the time dimension of standing, focuses on whether an injury which has not occurred is sufficiently likely to happen to justify judicial intervention. *See generally* 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3531.12, at 50 (1984).

■ James Doe and Jane Doe allege that the challenged statutes chill the exercise of their constitutional rights. As indicated, the Court's first inquiry must be to determine whether these plaintiffs are threatened by enforcement of the statute. *Cf. J.N.S., Inc. v. Indiana,* 712 F.2d 303, 306 (7th Cir.1983) (plaintiff lacked standing in absence of proof the challenged statute could be applied to it). The statute must apply to the named plaintiffs if they are to have standing. Moreover, unless the threat of prosecution is sufficiently imminent, the instant challenge is not ripe for review.[1] While there must be a realistic threat of prosecution, it is not necessary that plaintiffs first expose themselves to arrest or prosecution. *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979). *See generally* 13A C. Wright, A. Miller & E. Cooper, *supra,* § 3532.5. Their fear of prosecution, as in the instant

---

1. Note that "a real threat of prosecution" has been discussed by some courts in the context of the "injury" requirement of standing. *See, e.g., Pollard v. Cockrell,* 578 F.2d 1002 (5th Cir.1978). The Court, however, recognizing that standing focuses on the party to the litigation and not the issues involved, chooses to limit its standing inquiry to whether plaintiffs are subject to enforcement of the statute. Unquestionably, chilling of plaintiffs' rights may be an "injury" for purposes of standing. *See, e.g., Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Moreover, very little injury need be shown to sustain standing. "[A]n iden-

tifiable trifle is enough for standing to fight out a principle; the trifle is the basis for standing and the principle supplies motivation." *United States v. Students Challenging Regulatory Procedures,* 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417 n. 14, 37 L.Ed.2d 254 (1973). Whether the threat of prosecution at this time is sufficient to justify judicial resolution of the dispute is an issue more appropriately discussed in the context of ripeness. Regardless of how the issues are discussed, however, the Court must address both concerns before it may conclude that the controversy is justiciable.

case, must be more than imaginary or speculative. *Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971).

■ Virginia's fornication and cohabitation statutes expressly apply to unmarried persons such as James Doe and Jane Doe. As with the criminal abortion statute challenged in *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), which proscribed an abortion except under certain conditions, there is no question that the plaintiffs are the "one[s] against whom these criminal statutes directly operate...." *Id.* at 188, 93 S.Ct. at 745.[2] Plaintiffs allege that they wish to have consensual sexual intercourse and cohabit with unmarried adults of the opposite sex. Defendants argue that, since James Doe and Jane Doe are not "proposed partners in the activities in which they hope to engage," there is insufficient basis for the Court to conclude that plaintiffs will have the opportunity to violate the challenged statutes or that they will be "chilled" in their conduct. The Court disagrees. In their depositions, both plaintiffs testified to having sexual intercourse with members of the opposite sex prior to this suit. Both admit to having opportunity to further violate the challenged statutes. They both testified in depositions that they have not violated the statutes since filing this suit because of their fear of prosecution. There is no reason for the Court to doubt these assertions. If plaintiffs' activities, which admittedly violate the challenged statutes, are called to the attention of the police, plaintiffs are susceptible to prosecution. Accordingly, plaintiffs have standing to challenge the constitutionality of these statutes.

■ Still, there must, in addition to standing, be a threat of prosecution sufficient to make this controversy ripe for review. The determination of ripeness, in actions such as this "is made on a case-by-case basis, by considering the likelihood that the complainant will disobey the law, the certainty that such disobedience will take a particular form, any present injury occasioned by the threat of prosecution, and the likelihood that a prosecution will actually ensue." *Blanchette v. Connecticut General Insurance Corp.*, 419 U.S. 102, 143 n. 29, 95 S.Ct. 335, 358 n. 29, 42 L.Ed.2d 320 (1974). Of these factors, the Court is most concerned with the present injury and the likelihood of prosecution.

Defendants argue that there are no allegations of a credible threat of prosecution of plaintiffs for violations of sections 18.2–344 and –345 of the Virginia Code. They point to the fact that violations of the statutes are common within all strata of the community and the fact that neither plaintiff has been personally threatened with prosecution. While this fact, coupled with defendants' contention that prosecution is premised on chance—i.e. the odds of prosecution are low because police must both receive a complaint and have available manpower—actual, threatened, or imminent prosecution is not the test. In *Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973), plaintiffs had standing to challenge a recently enacted criminal abortion statute even though there had been no actual or threatened prosecution under the statute. As in *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 302, 99 S.Ct. 2301, 2311, 60 L.Ed.2d 895 (1979), "the State has not disavowed any intention of invoking the criminal penalty provisions" for violations of the statutes; Defendants admit in depositions the statutes will be enforced if complaints are received and manpower is available. In *Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), the Court found no case or controversy when a statute, enacted in 1879, prohibiting the use of contraceptive devices and the giving of medical ad-

---

2. For recent application of this requirement in cases challenging "drug paraphernalia" laws, *see Hejira Corp. v. MacFarlane*, 660 F.2d 1356, 1360 (10th Cir.1981); *Brache v. County of Westchester*, 658 F.2d 47, 51 n. 6 (2d Cir.1981), *cert. denied*, 455 U.S. 1005, 102 S.Ct. 1643, 71 L.Ed.2d 874 (1982); *Atkins v. Clements*, 529 F.Supp. 735 (N.D.Tex.1981) *Nova Records, Inc. v. Sendak*, 504 F.Supp. 938, 942 (S.D.Ind.1980), *aff'd*, 706 F.2d 782 (7th Cir.1983); *High Ol' Times, Inc. v. Busbee*, 449 F.Supp. 364, 366–67 (N.D.Ga.1978), *aff'd*, 621 F.2d 135 (5th Cir.1980).

vice on their use, had apparently been enforced only once before the constitutional challenge was made. The evidence before the Court in the instant case indicates that the challenged statutes have recently been enforced. The Court concludes that this case is ripe for review. Accordingly, the Court has jurisdiction to decide the issue on its merits.

### III. Effects of Previous Decisions

Defendants assert that two previous decisions, binding upon the Court, compel dismissal of this complaint. Contrary to defendants' assertions, however, the two cases, Doe v. Commonwealth's Attorney, 403 F.Supp. 1199 (E.D.Va.1975), aff'd, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976) and Lovisi v. Slayton, 363 F.Supp. 620 (E.D.Va.1973), aff'd, 539 F.2d 349 (4th Cir.), cert. denied, 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 585 (1976), though instructive, are not dispositive of the issues presented herein.

■ In Doe v. Commonwealth's Attorney, a three-judge panel declared Virginia's sodomy statute, § 18.1–212 (currently codified at § 18.2–361), constitutional. The Court, in that instance, determined that the right of privacy did not extend to homosexual conduct. The Judge of this Court, in dissent, concluded that the right of privacy did, in fact, extend to consensual, sexual conduct which takes place in private. Id. at 1204–05 (Merhige, J., dissenting).

The precedential effect of the summary affirmance of Doe v. Commonwealth's Attorney by the United States Supreme Court extends only to the precise issues presented and necessarily decided by the action of the three judge panel; no more may be read into a summary affirmance

than is essential to sustain the judgment. Illinois Election Board v. Socialist Workers Party, 440 U.S. 173, 182–83, 99 S.Ct. 983, 989–90, 59 L.Ed.2d 230 (1979). Unquestionably, the summary affirmance in Doe was an adjudication on the merits of the issues in that case. Hicks v. Miranda, 422 U.S. 332, 345 n. 14, 95 S.Ct. 2281, 2290 n. 14, 45 L.Ed.2d 223 (1975). The Court declines to speculate and extend the Supreme Court's affirmance in Doe beyond the facts presented therein.[3] See Lovisi, 539 F.2d at 355 (Winter, J., dissenting). Accordingly, the Court accepts that Virginia's sodomy statute as applied to adult males who consensually engage in homosexual sodomitic activity in privacy is a constitutional exercise of state power.

James Doe and Jane Doe, however, do not assert a right to engage in such homosexual conduct; their assertion is that, as applied to them, the cohabitation and fornication statutes are unconstitutional. The case of Doe v. Commonwealth's Attorney is not dispositive, nor does it discuss these issues. A declaration that the right of privacy does not extend to homosexual, sodomitic activity does not imply that the right of privacy would not extend to consensual, heterosexual conduct between unmarried adults.

■ In Lovisi, the question facing this Court and the Court of Appeals was whether the right of privacy extended to heterosexual relations between consenting, married adults when such relations were witnessed by a third person and photographed. The Court of Appeals, though not without studious dissent, affirmed the judgment of this Court, concluding that the Lovisis surrendered their marital right of privacy

---

**3.** There is much dispute over how much can be read into the Supreme Court's summary affirmance in Doe v. Commonwealth's Attorney. In Carey, Justice Brennan noted that "the Court has not definitely answered the difficult question whether and to what extent the Constitution prohibits state statutes regulating ... [private consensual sexual] behavior among adults." Carey v. Population Services International 431 U.S. 678 at 694 n. 17, 97 S.Ct. 2010 at 2021 n. 17, 52 L.Ed.2d 675 (1977) (Brennan, J., concurring,

joined by Stewart, Marshall, and Blackmum, J.J.). Justice Rehnquist, in dissent, however, noted that: "While we have not ruled on every conceivable regulation affecting such conduct, the facial constitutionality validity of criminal statutes prohibiting certain consensual acts has been definitively established." Id. at 718, 97 S.Ct. at 2033 n. 2 (Rehnquist, J. dissenting) (citing the summary affirmance in Doe v. Commonwealth's Attorney).

when they admitted a third person. *Id.,* 539 F.2d at 351. The majority found it unnecessary to recognize a right of privacy outside the marriage.

In the instant case, the issue of whether the constitutional right of privacy extends to unmarried adults to engage in consensual, non-prostitutional, heterosexual relations in private must be decided. The majority in *Lovisi* implied, without deciding, that there was no such right. While the Court's instant task would be greatly lightened if it were so, *Lovisi* simply is not dispositive of this issue.

## IV. Plaintiffs' Constitutional Right of Privacy.

The fundamental substantive issue before the Court is whether the State, consistent with the Constitution, may restrict the non-prostitutional, heterosexual activities of two unmarried, consenting adults when such activities occur in the privacy of one's home. Plaintiffs contend such intimate, sexual activity is protected by the constitutional right of privacy; any attempts by the state to regulate this activity is unconstitutional. Defendants contend the right of privacy only extends to sexual conduct between two people who are married to each other; heterosexual conduct between unmarried adults does not fall within the scope of the right of privacy.

The Court has had occasion in previous opinions to outline the nature and extent of the constitutional right of privacy as it relates to intimate sexual relations between consenting adults in private. *See, e.g., Doe v. Commonwealth's Attorney,* 403 F.Supp. at 1203–04 (Merhige, J., dissenting) (constitutional rights of privacy as it relates to homosexual conduct); *Lovisi,* 363 F.Supp. at 624–26 (extent of the constitutional right of privacy between married persons where third person is present and the activity is photographed). The Court must now decide whether its analysis of the constitutional right of privacy changes in light of subsequent decisions.

Since its seminal decision of *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678,

14 L.Ed.2d 510 (1965), the Supreme Court has clarified the nature of the right of privacy as related to decisions of whether to bear or beget a child. The right of privacy expressed in *Griswold* was argued by some to extend only to marital privacy. *See, e.g., Doe,* 403 F.Supp. at 1201. The case of *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), held that there was no rational, articulated reason for limiting the access to contraceptives of single adults when married adults are afforded a right to contraceptives. "[W]hatever the rights of the individual to access to contraceptives may be, the rights must be the same for the unmarried and the married alike." *Id.* at 453, 92 S.Ct. at 1038. The case of *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), decided one year later, extended the right of privacy to first trimester abortions.

Although the full extent of the right of privacy has not been determined, it is clear that the "decision whether or not to beget or bear a child is at the very heart of [the] cluster of constitutionally protected choices." *Carey v. Population Services International,* 431 U.S. 678, 685, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977). The *Carey* case, decided over a year after the Court of Appeals decision in *Lovisi, supra,* and the Supreme Court's summary affirmance of *Doe, supra,* make it clear that individual autonomy in matters of childbearing extend to married and single people alike.

> *Griswold* may no longer be read as holding only that a state may not prohibit a married couple's use of contraceptives. Read in light of its progeny, the teaching of *Griswold* is that the Constitution protects individual decisions in matters of childbearing from unjustified intrusion by the state.

*Carey,* 431 U.S. at 687, 97 S.Ct. at 2017.

Necessarily implicit in the right to make decisions regarding childbearing is the right to engage in sexual intercourse. To hold otherwise would result in the constitutional right to decide whether to bear or beget a child contingent on one's marital

status. *Carey* makes it clear that such a limitation is not valid. "If the right of privacy means anything, it is the right of the *individual,* married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." *Eisenstadt,* 405 U.S. at 453, 92 S.Ct. at 1038 (emphasis original). The decision to engage in sexual intercourse, just as the decision to use contraceptives, is a matter fundamental to the decision whether to bear or beget a child. In the view of this Court, the constitutional right of privacy extends to a single adult's decision whether to engage in sexual intercourse.

■ The inquiry, however, does not end here. Even fundamental constitutional rights are not absolute; the state's regulation of these rights may be justified if the statute infringing on them is shown to be narrowly tailored to further a *compelling state interest. Roe,* 410 U.S. at 155, 93 S.Ct. at 728. The Court has great difficulty accepting an argument that the state's purpose for the fornication statute is anything other than preventing sexual intercourse among unmarried individuals. Clearly, such a purpose would not be constitutionally permissible. Nevertheless, defendants have articulated other reasons for passing the fornication statute. None of these reasons, in the Court's view, justify the fornication statute.

The defendants, in this instance, argue that the compelling reason for the fornication statute is to further the State's interest in "encouraging, promoting and regulating traditional marital and family relationships as well as traditional moral values." Defendants add that the fornication statute is designed to protect the State's citizens from sexual diseases and to minimize illegitimate births. As laudable as these state goals are, they do not justify an absolute prohibition of the exercise of a constitutionally protected activity.

■ The Court cannot accept the contention that sexual abstention, forced through criminal sanctions, will encourage or regulate marriage. Just as the decision whether to bear or beget a child, a decision to marry is a personal choice protected by the right of privacy. *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). Such a decision cannot be coerced through infringement on other constitutional rights. Moreover, this state purpose, an attempt to regulate public morals, cannot extend into the privacy of one's home. There is no showing that fornication in private has any detrimental effect on society. In the absence of such a showing, an individual's right of privacy extends even to socially condemned activity so long as it is conducted in the privacy of the home. *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). *See also Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 67, 93 S.Ct. 2628, 2640, 37 L.Ed.2d 446 (1973). "Our whole constitutional heritage repels at the thought of giving government the power to control men's minds." *Stanley,* 394 U.S. at 565, 89 S.Ct. at 1248. The Court appreciates the state goals of encouraging and regulating marital relationships and moral values. Such goals may be, and indeed are, generally accepted as desirable. Nevertheless, when an individual's constitutional rights are restricted in an effort to attain those goals, the state's interest must be more than merely desirable—it must be *compelling.* Our Constitution preserves for the individual the right to decide whether to procreate or marry. The state interest of promoting healthy and conforming social values is not a compelling interest which justifies deprivation of these fundamental constitutional rights.

■ The State's desire to prevent sexual diseases, although legitimate, does not justify prohibiting the exercise of a constitutional right. The fornication statute, involving, as it does, a fundamental right, "must be narrowly drawn to express only the legitimate state interests at stake." *Roe,* 410 U.S. at 155, 93 S.Ct. at 728. The fornication statute is not narrowly drawn. All single people who engage in sexual intercourse do not pose a threat of spreading sexual diseases. Yet the statute pro-

hibits single people under all circumstances and in any state of health from engaging in sexual intercourse. In short, the fornication statute is too broadly drawn to fulfill this stated purpose in light of the fundamental right implicated by the statute.

Finally, defendants argue that the fornication statute is designed to minimize illegitimate births. This argument is simply another way of saying that the statute is designed to prevent unmarried individuals from having children. That argument lacks viability. The decision whether to bear or beget a child is a personal one—a constitutional right. In the interest of encouraging family relationships, an attempt to minimize illegitimate births may be a justifiable exercise of state power. Though the interest be legitimate, it is not sufficiently compelling to outweigh an unmarried individual's right to procreate. If the state wishes to minimize illegitimate births, it will have to use alternative means. One alternative is to enact a statute, such as the Georgia statute discussed in *Parham v. Hughes*, 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979), which outlines procedures, short of forced marriage, that can be used to legitimate a child. The state may attempt to educate its citizens on the "immorality" of bearing or begetting a child out of wedlock. The state does not, however, have the power to impose criminal sanctions upon a person who engages in constitutionally protected conduct.

The focus of the Court changes some with regard to the cohabitation statute. Code Section 18.2–345 punishes two types of behavior: all "open and gross lewdness and lasciviousness" and conduct between persons who are not married to each other and are cohabiting together which is lewd and lascivious. *See Everett v. Commonwealth*, 214 Va. 325, 200 S.E.2d 564, 566 (1973). Only the portion of the statute proscribing the latter type of behavior is at issue here. Unquestionably, the state has the power to prevent open and gross, lewd and lascivious conduct. As discussed *supra*, the right to engage in heterosexual intercourse, implicit in the right to bear or beget children, is guaranteed by an individual's right of privacy. Although the right of privacy does not always have a seclusion aspect to it, *see, e.g., Roe v. Wade, supra;* seclusion is a necessary incident of the right to engage in heterosexual relations. "Obviously, there is no necessary or legitimate expectation of privacy which would extend to marital intercourse on a street corner or a theatre stage." *Paris Adult Theatre I,* 413 U.S. at 66 n. 13, 93 S.Ct. at 2640 n. 13.

The portion of the statute that is in question, however, proscribes all lewd and lascivious conduct—regardless of whether the conduct is open—between persons not married to each other who are cohabiting. Defendants assert that *Everett, supra,* makes openness a requirement of a criminal conviction under section 18.2–345. Careful reading of *Everett,* however, reveals that defendants' assertion is erroneous. The defendants in *Everett,* although charged with "unlawful cohabitation," were found guilty of "open and gross lewdness and lasciviousness." *Everett,* 214 Va. at 327, 200 S.E.2d at 566. The Court's opinion expressly focused only upon the issue of whether the evidence was sufficient to sustain the conviction. The Court indicated in a footnote that the portion of the statute criminalizing lewd and lascivious cohabitation by persons not married to each other was not shown to be violated because evidence of the defendants' marital status was not presented. *Id.* at 327 n. 1, 200 S.E.2d at 566 n. 1. There is no suggestion in *Everett* that this portion of the statute is unenforceable or requires a showing of open cohabitation.

Neither is *Cord v. Gibb,* 219 Va. 1019, 254 S.E.2d 71 (1979) dispositive of the issues raised by plaintiffs. In *Cord,* the Court merely held that the fact that a bar applicant jointly owned and resided in a dwelling with a member of the opposite sex had "no rational connection to ... fitness to practice law." *Id.* at 1022, 254 S.E.2d at 72–73. Contrary to defendants' assertions, the Court sees little relevance of *Cord* to

the issues raised by plaintiffs here, much less a "direct bearing on the proof required to support a criminal charge...."

 It is the opinion of the Court that the portion of the statute criminalizing lewd and lascivious cohabitation between persons not married to each other cannot withstand constitutional scrutiny.[4] The articulated state interests in having a cohabitation statute are identical to those state interests for the fornication statute. As discussed *supra*, all individuals have a constitutional right to decide whether to procreate. Implicit in this decision is the right to engage in private heterosexual intercourse. The state cannot absolutely proscribe such conduct. It is irrational to limit such conduct, if partners are not married to each other, only to those persons who are *not* living together. Such a limitation hardly furthers the marital relationship and may even frustrate a family relationship— unmarried parents of a child would be deterred from living together.

 The Court concludes that, as they relate to the plaintiffs here, Virginia Code sections 18.2–344 and 18.2–345 are too broad to withstand the searching scrutiny required when fundamental rights are restricted.[5] Plaintiffs have a fundamental constitutional right to decide whether to bear or beget children which can be infringed upon only in limited circumstances. De-

fendants have failed to articulate a compelling state interest which justifies the extensive intrusion into plaintiffs' constitutional rights.

An appropriate order will issue.

## ORDER

For the reasons stated in the memorandum this day filed and deeming it proper so to do, it is ADJUDGED and ORDERED as follows:

1. The Court declares that Virginia Code Section 18.2–344 and that portion of Section 18.2–345 which reads, "not married to each other, lewdly and lasciviously associate and cohabit together or," deprive plaintiffs of constitutional rights and are of no force and effect.

2. Defendants, each of them, their agents, servants, employees, and all acting in concert therewith be and they are hereby enjoined from enforcing the aforementioned statutes; judgment is entered in favor of the plaintiffs, and they are entitled to their taxable costs.

---

**4.** As should be clear from the text, the Court only addresses in this case the constitutionality of that portion of Section 18.2–345 that proscribes "any persons, not married to each other," from "lewdly and lasciviously" associating and cohabiting together. The portion of the statute proscribing "open and gross lewdness and lasciviousness" is not challenged here, and would appear to be constitutional. *See* text *supra* p. 968. Accordingly, the Court's conclusion that Section 18.2–345 is unconstitutional applies only to the former phrase in that section of the code.

The Court notes that it is proper here to sever the unconstitutional portion of the statute for purposes of this ruling. As the Supreme Court has recently held, severability is generally a question of legislative intent. *See Regan v. Time, Inc.*, — U.S. —, 104 S.Ct. 3262, 3269, 82 L.Ed.2d 487 (1984). Further, there is a presumption of severability; and the invalid part

may be dropped if what is left is fully operative as a law. *Id., quoting Buckley v. Valeo*, 424 U.S. 1, 108, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976). Applying these standards, the Court finds no legislative intent to preclude severance of any part of this statute. Further, the Court finds that the statute is fully operative as a law with the objectionable portion severed.

**5.** It is important to note that the Court necessarily limits its inquiry into the constitutionality of statutes proscribing non-prostitutional, consensual, heterosexual conduct between two adults. To what extent this right of privacy extends to minors is not an issue before the Court. Likewise, the issues of whether the state may regulate or prohibit the commercial sale of sexual services and whether an individual has a legitimate expectation of privacy in prostitutional activities are issues not before the Court and, consequently, not decided today.